# WHEELING.

## HUGHES & CO. ·v. HAMILTON *et als.*

Submitted August 19, 1879.   Decided April 15, 1882.

1. The *jus disponendi* is an incident to the ownership of the separate estate of a married woman; and it can only be taken away or limited by express words or by an intent so clear as to be the equivalent of express words. The liability of the separate estate of a married woman to the payment of all her debts incurred during coverture is also an incident of the ownership of such separate estate; and it can only be taken away by express words or by an intent so clear as to be the equivalent of express words. But these incidents, liability to the payment of her debts, and her *jus disponendi*, extend no further than to all her separate personal property and the rents and profits of her separate real estate accruing during coverture. (p. 389).

2. The debts of a married woman, for which her separate estate is liable, are such as arise out of any transaction, out of which a debt would have arisen, if she were a *feme sole*, except that her separate estate is not bound by a bond or covenant based on no consideration, such bond or covenant being void at law, and she not being estopped in a court of equity from showing, that it was based on no consideration. (p. 389).

3. The consideration, which will support an action for her debts or contracts, so as to make her separate estate liable, need not inure to her own benefit or that of her separate estate, but it may inure to the benefit of her husband or any third party, or may be a mere prejudice to the other contracting party; in short it may be any consideration, which would support the contract, if she were a *feme sole*. But her separate estate cannot be made liable for the payment of any debt of her husband or any other person, unless she has agreed to pay the same by some contract in writing signed by her or by some one authorized by her. She may become surety for her husband, and her separate estate will be liable for the debt. (p. 389).

4. A married woman can affect or charge the *corpus* of her real estate by a conveyance or specific lien created by deed, in which her husband unites with her, and which she executes after privy examination; and this she can do whether her trustee in any way unites in the deed creating the specific lien on her separate real estate or not, unless she is restrained by the instrument creating the separate estate from so doing by express words or by an intent so clear as to be the equivalent of express words. (p. 392).

5. The debt of a general creditor of a married woman does not constitute a lien or charge upon the separate estate real or personal of such married woman prior to the institution of suit by such creditor to subject such separate estate to the payment thereof. (p. 395).

6. Such creditors of a *feme covert* have no priority over each other, unless it be acquired by superior diligence in proceeding to obtain satisfaction. (p. 393).

7. A general creditor of a married woman has no lien or charge upon her separate estate prior to the institution of his suit in equity to subject such separate estate to the payment of his debt; it is therefore not necessary or proper to make her other general creditors parties defendants to his bill. (p. 393).

8 But other general creditors of a *feme covert* may each file his bill to subject such separate estate to the payment of his debt; and perhaps they may file petitions in a pending cause for the purpose praying, that such separate estate should also be subjected to the payment of their respective debts. (p. 393).

9. Such general creditors will be allowed priority of payment out of such separate estate between each other according to the time or times, when their suits are brought or their petitions filed. (p. 393).

10. A general creditor of a *feme covert* may subject the separate estate of a *feme covert* to the payment of his debt, but with us he cannot do so by obtaining a personal judgment in a court of law against the *feme covert*. His remedy is by bill in a court of equity to subject such separate estate to the payment of his debt, not because his debt is a lien or charge upon such separate estate, any more than the debt would be against the estate of a *feme sole*, but because the debt is just, and it is just and equitable, that such separate estate should be subjected to the payment of the debt, and a court of equity affords the remedy and the only remedy by proceeding *directly* to subject such separate estate to the payment of the debt according to its rules and principles in such cases. (p. 394).

11 The proceeding in a court of equity by bill to subject the separate estate of a *feme covert* to the payment of her debts is in the nature of a proceeding *in rem.* (p. 394).

12. In a proceeding in equity by a general creditor against a *feme covert* to subject her separate estate to the payment of his debt a court of equity generally will not sell the *corpus* of her real estate to pay such debt, but will only subject the annual rents and profits during the joint lives of herself and her husband to the payment of such debt; but such court will sell the separate personal property of the *feme covert* and apply the proceeds of the sale thereof to the payment of the debt. (p. 394).

13. In such a proceeding perhaps all rights acquired from or under the *feme covert* to her separate property sought to be subjected in the proceeding to the payment of her debt, pending the proceeding, are subject to any decree, which may be made in the proceeding, except so far as a purchaser may be protected by section 14 of chapter 139 of the code of this State as amended by chapter 68 of the Acts of the Legislature passed February 27, 1877, p. 93. In all other respects the maxim *pendente lite nihil innovetur* applies. (p. 394).

14. The debt of a general creditor of a *feme covert* after suit brought by such creditor to subject such separate estate to the payment of such debt becomes a *quasi* lien at least upon such separate estate and for the satisfaction thereof. (p. 395).

15. When the court has jurisdiction of the parties and the subject-matter of the suit, the debtor cannot have a decree confirming a sale of real estate reversed for errors merely in the decree ordering the sale of such realty, where the purchaser is a stranger. (p. 396).

16. In sales made by commissioners under decrees and orders of a court of equity the purchasers, who have bid off the property and paid their deposits in good faith, are considered as having inchoate rights, which entitle them to a hearing upon the question, whether the sale shall be set aside. (p. 399).

17. The court may in the exercise of a sound discretion either affirm or set aside the sale, when from the facts, evidence and circumstances before it it appears clearly, that the sale was made at a greatly inadequate price; and the court may also solve the question upon affidavits or depositions in connection with the fact, that a greatly larger price is offered to the court for the land and secured, or offered to be secured, or may set the sale aside upon any evidence or fact or facts before it, which clearly shows, that the land was sold at a greatly inadequate price. The discretion, which the court may exercise, will not authorize it to set aside the sale without sufficient cause; and a greatly inadequate price is among other things a sufficient cause. (p. 399).

Appeal from and *supersedeas* to certain decrees of the municipal court of the city of Wheeling, rendered respectively on the 27th day of August, 1877, on the 15th day of October, 1877, on the 4th day of December, 1877, on the 20th day of February, 1878, on the 29th day of February, 1878, and on the 4th day of March, 1878, in a cause in said court then pending wherein Thomas Hughes & Co. were plaintiffs, and Susan R. Hamilton and others were defendants, allowed upon the petition of said Hamilton.

Hon. G. L. Cranmer, judge of the municipal court of the city of Wheeling, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case :

On the 2d day of December, 1876, the plaintiffs commenced their suit in equity against the defendants in the municipal court of Wheeling, Ohio county, in their bill alleging substantially, that on the 18th day of December 1875 at the city of Wheeling, the defendant, James Hamilton, (who was then and since the husband of the defendant, Susan R. Hamilton) was indebted to them in a large sum of money exceeding in the aggregate the sums of the two notes in writing hereinaf-

ter mentioned; that on the day and year last aforesaid at said city the said James Hamilton made his certain promisory note in writing of the date last aforesaid, and thereby and then and there promised to pay, sixty days after the date thereof, to the order of the said Susan R. Hamilton $195.75, for value received, negotiable and payable at the Commercial Bank at Wheeling, W. Va., and the said defendant Susan R. Hamilton on the day and year last aforesaid at said city endorsed the said note to the plaintiffs and by her said endorsement bound her separate estate for the payment thereof, and she then and there subscribed her name to said endorsement, which said note so endorsed was then and there on the day and year last aforesaid at the said city delivered by the said James Hamilton to the plaintiffs in consideration of indebtedness to the amount of said note then due and payable to them from him said James Hamilton, that said Susan R. Hamilton was the wife of said James Hamilton on the day and year last aforesaid, when she endorsed the said note and has been ever since; that she made said endorsement for the purpose of making the money in said note payable to the plaintiffs, according to the tenor and effect thereof and also for the accommodation of her husband, and as security for him, and to procure further indulgence of time of payment of said debt then due from him to plaintiffs, and to induce plaintiffs to grant her said husband further time on said last named debt, and with intent by such endorsement to bind her sole and separate estate and property for the payment of the money specified in said note to the plaintiffs, when it became due; and that the plaintiffs received the said note from said James Hamilton and extended the time of payment of the money therein mentioned from the date thereof until its maturity relying on the security of said endorsement, and in consideration thereof; that said James Hamilton did not nor did any other person or persons pay the said note or any part thereof, when the same became due, although the same was duly presented for payment and payment thereof demanded at the said bank, on the day it fell due, of which demand and non-payment the said Susan R. Hamilton had due notice, and thereupon said note was duly and legally protested for non-payment, and said Susan duly and legally notified of such protest; that the cost of such pro-

test was $1.50; that the money specified in the said note and the said cost of protest have not nor has any part thereof been paid by said James Hamilton or any other person; that on the 13th day of March, 1876, at said city the said James Hamilton made his certain other promissory note in writing, the date of which is the day and year last aforesaid, and thereby and then and there promised to pay sixty days after the date thereof to the order of the defendant, Susan R. Hamilton, the further sum of $159.00, for value received, negotiable and payable at the Commercial Bank at Wheeling, W. Va.; that the said Susan R. Hamilton then and there on the day and year last aforesaid endorsed the last mentioned note to the plaintiffs, and by said last mentioned endorsement bound her separate estate for the prompt and punctual payment of the last named note, and she then and there subscribed her name to said last mentioned endorsement, which last named note so endorsed as aforesaid was then and there on the day and year last aforesaid, at said city delivered by said James Hamilton to the plaintiffs in consideration of indebtedness to the amount of said note then due and payable from him to them in addition to the first mentioned note.

The bill then proceeds to allege and aver as to the consideration of said second note, its purposes, &c., and as to its presentation, non-payment, protest $1.50, and said notice thereof to the said Susan, as it does as to the first note. The bill then further alleges, that the said Susan R. Hamilton at the date of·said first endorsement had and owned separate estate, and that she acquired no other property since and owns now only such property, as she then had, and that she has continued to own and possess the same property from the time she made said first endorsement until the present; that the said separate estate and property consists of the following real and personal estate in said city, in the county of Ohio and State of West Virginia, that is to say : that piece of real estate fronting on Market and Fourteenth streets on which is located the building known as " Hamilton's Opera House," being part of lot numbered sixteen, in square numbered six. The bill then gives the metes and bounds of said part of lot; also sixty yards of wool carpet, one sofa, one green drop curtain, twelve flats and wings, one chandelier on stage, one hot

air furnace, four sets of box-curtains, five hundred chairs, one lot of matting, two hundred yards of carpet, and other useful and ornamental furniture and fixtures contained in the said Opera House—a fuller description of which plaintiffs are unable to give, and they therefore ask a full and explicit discovery thereof from the said Susan ; and also a counter, sideboard and bar-furniture and fixtures contained in the barroom in said building—a fuller description of which bar-furniture plaintiffs are unable to give and therefore ask a full and explicit discovery thereof from the said Susan ; and also certain household and kitchen furniture situate in the dwelling house on Fifteenth street in said city occupied by said Susan and her said husband as a dwelling, but a more particular description of said household and kitchen furniture the plaintiffs cannot give and therefore ask a full and explicit discovery thereof from the said Susan.

The bill further alleges that by deed dated the 25th day of January, 1872, the undivided one-half of said real estate, on which said Opera House is located was granted to the defendant, Alexander Bone, by said James Hamilton in trust, to hold the same for the sole and separate use of the said Susan R. Hamilton and her heirs, with power to the said Susan R. Hamilton by her sole act, lease, deed, will, writing or otherwise, notwithstanding coverture, to lease, sell, devise, mortgage, give a lien upon, or otherwise dispose of the property, or any part thereof, during her life and afterwards and to appoint the fee simple or less estate or interest therein at her discretion, and to receive the rents, issues and profits thereof to and for her sole and separate use, and give good acquittances, receipts and discharges for the same without any control or interference, right, interest or estate of her husband, which trust was accepted by said Bone by signing said deed, and which deed having been duly acknowledged and delivered is of record in the clerk's office of the county court of said county, and the original of which is filed with the bill marked " Plaintiffs' Exhibit C," and made a part of the bill.

Plaintiffs further allege and aver, that the said Susan R. Hamilton inherited a good fee simple estate and title in and to the undivided one third of said real estate, on which said Opera House is located from her father, William H. Stelle,

who died intestate many years prior to the year 1872, and that she inherited a good fee simple estate and title in and to the other undivided one sixth thereof from her sister, Mary Stelle, who died intestate, unmarried and without issue prior to the year 1872; that the said Susan R. Hamilton owns and possesses said real estate, one half under and by virture of said deed and the other as heir of said Williams H. Stelle, deceased, and Mary Stelle, deceased, as aforesaid subject however, to the liens hereinafter mentioned, and the same was, at the time she made the first mentioned endorsement her separate property, subject to said liens, and has continued to be her separate property ever since subject to said liens ; that the defendant, The German Fire Insurance Company of Wheeling, West Virginia, has and holds four several liens upon said Opera House and the said real estate, upon which it is located, to secure the payment of four promissory notes or instruments in writing made and signed by said James Hamilton and said Susan R. Hamilton, and amounting in the aggregate for principal to the sum of $22,500.00, all of which last named notes are secured by deeds of trust made and executed by said James and Susan R. Hamilton to the defendant, James P. Rogers, as trustee ; the first of said four notes bears date December 17, 1874, and is for $11,000.00 and is payable three years after its date to the order of said company, with interest from its date payable semi-annually in advance, and is secured by deed of trust of same date, which is of record in said clerk's office ; the second thereof is dated January 14, 1875, and is for $2,000.00 and payable twelve months after date, and is payable to the order of said company, and bears interest from its date, payable semi-annually in advance, and is secured by deed of trust of same date which is of record in the same clerk's office ; the third thereof is dated the 15th day of May, 1875, and is for the sum of $1,000.00 payable twelve months after its date with interest from its date payable semi-annually in advance, and is payable to the order of said company, and secured by deed of trust of same date and of record in said clerk's office ; and the other thereof is for the sum of $8.500.00 dated the 20th day of September, 1875, bears interest from its date, payable semi-annually in advance, and payable three years from its date to the order of

said company and secured by deed of trust of even date therewith, of record in the same clerk's office; that all of said deeds of trust are liens on the said Opera House and real estate, on which it is located, and the last named of said deeds of trust is also a lien on said sixty yards of wool stage carpet, sofa, six chairs, green drop curtain, twelve flats and wings, chandalier on stage, hot air furnace, four sets of box-curtains, five hundred chairs, lot of matting, two hundred yards of carpet and all other useful and ornamental furniture and fixtures of every kind and description contained in said Opera House.

The plaintiffs further allege, that the defendant, William H. Robinson, is the holder and owner of a lien upon said Opera House, and the real estate upon which it is located, to secure a promisory note made by said James Hamilton, dated the 20th day of September, 1875, at said city and payable six months after date to the order of said Robinson, for the sum of $1,300.00 for value received, and negotiable and payable at the Bank of the Ohio Valley, by virtue of a deed of trust thereon dated the day and year last aforesaid, and of record in said clerk's office. The bill further alleges, that said notes payable to said company are all charges upon and bind the separate estate of said Susan R. Hamilton by the terms thereof; that the makers thereof have been paying said company more than the legal rate of interest upon the money specified therein, and that an account being taken under the order or decree of the court, a much smaller amount than the aggregate amount of the principal thereof will be found due by virtue thereof to said company, but the exact amount due, after allowing a credit thereon of the excess of interest over six per cent. per annum paid said company on the money therein specified is unknown to plaintiffs. Plaintiffs further allege, that said promissory note held by said Robinson is still wholly unpaid, and that the same is owned and held by him. Plaintiffs further allege, that when the said Susan R. Hamilton made said endorsements, she thereby charged the debts evidenced by said two first mentioned notes upon the separate property, which she then owned as aforesaid, and intended so to do; and she then made said last mentioned debts liens upon the same. The plaintiffs also aver, that said James Hamilton is insolvent, and that the said separate estate of Susan R.

Hamilton is barely sufficient in value to satisfy the claims of the plaintiffs, and prior liens thereon and the costs of this suit.

The plaintiffs pray, that the said separate real estate and other property of the said Susan R. Hamilton be applied to the payment and satisfaction of the claim of the plaintiffs, and that unless their claims be paid within a stated day to be fixed by the court, said separate property, both real and personal, be sold under the decree of the court, and the residue of the money arising from such sale left after paying the costs of the suit and expenses of sale, and the amount properly due said insurance-company and said Robinson out of such proceeds of sale as are properly applicable thereto, may be applied to the payment of plaintiffs' said claims as far as necessary; that said James H. Hamilton and Susan R. Hamilton may be enjoined and restrained by injunction from in any way encumbering or conveying, selling or otherwise disposing of said property or any part thereof, until the further order of the court; and that said insurance-company may be also enjoined and restrained by the injunction of the court from endorsing away, selling, assigning or in any way parting with the said four notes in writing held by it as aforesaid, until the further order of the court. Plaintiffs also pray for such other and general relief as the court may grant. This bill is verified by affidavit.

The two notes held by the plaintiffs in their bill described are filed and are a part of the record, and they are correctly described in the bill. Upon one of said two last named notes are written these words, viz: "I hereby bind my separate estate for the prompt and punctual payment of this note." Signed, "Susan R. Hamilton." And upon the other: "I hereby bind my separate estate for the payment of this note." Signed, "Susan R. Hamilton." The certificate of a notary of the presentation of each of said notes and the non-payment thereof and the protest of each of them and notice to the maker and endorser is a part of the record and seems to be in due form and shows the costs of protest, &c., of each note to be $1.50. The deed from James Hamilton to Alexander Bone dated the 25th day of January, 1872, as trustee for said Susan R. Hamilton in the bill mentioned for an undivided

half of said lot numbered sixteen in square six is a part of the record and is correctly described in the bill. It appears to have been signed by James Hamilton and Alexander Bone the trustee, and by each of them duly acknowledged before the recorder of said county of Ohio and by him admitted to record on the day of its date. It appears, that on the 2d day of December, 1876, the said municipal court awarded an injunction in the cause on motion of the plaintiffs, to restrain the said Susan R. Hamilton and James Hamilton until further order, from encumbering or conveying, selling or otherwise disposing of the separate property of said Susan R. Hamilton. On the said 2d day of December, 1876, the said municipal court granted an injunction restraining the said insurance-company from transferring or parting with its said four notes.

It further appears, that on the 3d day of February, 1877, the cause was heard by the court upon bill taken for confessed as to all the defendants, and the court by its decree referred the cause to one of its commissioners, who was required to examine, state, settle and report to the court an account of the separate estate of the defendant, Susan R. Hamilton, the liens upon the same or any part thereof, and the respective amounts and priorities of such liens, and upon what portion of said separate estate each lien is an encumbrance, and of the value of the real estate mentioned in the bill as belonging to said separate estate, and of the remainder of said separate estate, &c., &c. The commissioner to whom the cause was referred reported to the court as follows:

" First. The defendant, Susan R. Hamilton, is the owner of a certain piece of real estate, fronting on Market street and on Fourteenth street, in the city of Wheeling, West Virginia, being part of lot numbered sixteen in square numbered six, and commonly known as the Hamilton Opera House property, and which is fully and accurately described in the complainants' bill filed herein.

"Second. Said Susan R. Hamilton is the owner in her own right of various articles of personal estate, to wit: sixty yards of wool stage carpet, one hot-air furnace, one sofa, six chairs, one green drop curtain, twelve flats and wings, one chandelier on stage, four sets of box curtains, five hundred

chairs, one lot of matting, two hundred yards of carpet, with the other personal property in said Opera House. She also owns one counter, mirror, sideboard and other bar-fixtures and appliances in the room known as the bar-room in said Opera House. She is also the owner in her own right of certain household furniture and by said Susan in her dwelling house on Sixteenth street in the city of Wheeling, West Virginia, to wit: one set of parlor-furniture composed of two large and four small chairs, center table, piano. She has two chamber-sets, one sideboard, dining-room chairs and dining table.

"Third. The liens upon the said real estate are as follows and have priority according to the order in which they are stated: 1. A deed-of-trust made by Susan R. Hamilton and husband to James P. Rogers, trustee, securing to the German Fire Insurance Company of Wheeling a note for $11,000.00, with interest from June 17, 1876, until paid. Said deed recorded December 18, 1874. 2. A deed of trust made by Susan R. Hamilton and husband to James P. Rogers, securing to said Fire Insurance Company a note for $2,000.00, with interest from the 14th of January, 1875, until paid. Said deed of trust was recorded January 15, 1875. 3. A deed of trust made by Susan R. Hamilton and husband to James P. Rogers, securing the said insurance-company a note for $1,000.00 with interest thereon from May 15, 1876, until paid. Said deed of trust was recorded May 19, 1875. 4. A deed of trust made by Susan R. Hamilton and husband to James P. Rogers, securing to said insurance-company a note for $8,500.00 with interest thereon from November 15, 1875, until paid. Said deed was recorded November 18, 1875. This deed is also a lien upon all the personal property in the said Opera House at that date, exclusive of the bar-room-furniture, and is the same described by James Hamilton as now in said Opera House. 5. Various sums paid by said insurance-company for fire insurance premiums for insurance on said Opera House as shown by the exhibit herewith returned as a part of this report, and marked 'R. G. Bann, commissioner, November 5th,' which amounted on the 14th day of April, 1877, to $778.19, $24.51 of which sum is interest; the balance of said sum is principal. A deed of trust made by Susan R. Ham-

ilton and husband to Alfred Caldwell, to secure William H. Robinson a note September 20, 1875, at six months, for $1,300.00. Said note is subject to a credit of $600.00 paid December 1, 1875. Said deed was recorded January 22, 1876, and is herewith returned as a part of this report with the original note thereby secured. The foregoing are all the liens upon the said real estate and the personal property in said Opera House, there being but the one lien on the said personalty.

"I further find the following debts to constitute a charge on the separate estate of the defendant, Susan R. Hamilton, though not secured by deeds of trust or by judgment or decree, though under the law they are, in my opinion, legitimate charges against it, and to be equally paid out of any fund arising from the sale thereof:

"1. A note marked 'Exhibit No. 8' dated June 3, 1875, at six months, to the order of Susan R. Hamilton for $900.00 payable at the National Bank of West Virginia at Wheeling and made by James Hamilton, endorsed by the maker and payee, and a writing endorsed thereon binding said Susan R. Hamilton's separate estate for the payment of said note, and signed by said Susan R. Hamilton. The entire principal of this note is still due with interest thereon from July 10, 1876, until paid. Mrs. Agnes Hamilton is the holder of this note.

"2. A note dated December 18, 1875, at sixty days, to the order of said Susan R. Hamilton, for $195.75 payable at the Commercial Bank and made by James Hamilton. By a writing signed by said Susan on the back of said note, she bound her separate estate for the payment of said note. This note is subject to a credit of $40.00, paid March 11, 1876. The balance on said note is due with interest until paid, except a further credit of 98 cents as of December 18, 1875, for excess of interest.

"3. A note dated March 13, 1876, at sixty days to the order of Susan R. Hamilton, for $159.00 payable at the Commercial Bank of Wheeling, and made by James Hamilton. On the back of said note there is a writing signed by said Susan R. Hamilton, binding her separate estate for the payment of this note. On this note a credit ought to be allowed of $100.00, paid December 9, 1876, and also a credit of eighty

cents for excess of interest as of the 13th day of March, 1876. The balance remains due with interest. The two notes last named are held and owned by the complainants, Thomas Hughes & Co.

"William Hare presented to your commissioner a note made by James Hamilton to said Hare for $53.17, and an account against him for $71.80 herewith returned marked respectively, 'R. G. Barr No. 10,' and 'R. G. Barr No. 11.' I decline to report in favor of either, as in my opinion there is not sufficient evidence to justify such charge. They are not liens or charges upon the separate estate of Susan R. Hamilton.

"I report the probable value of said Susan R. Hamilton's real estate to be about $25,000.00; I report the probable value of said Susan R. Hamilton's personal estate to be about $1,000.00. To this report no exceptions were filed. All of which is respectfully submitted."

The four deeds of trust executed by defendants, Susan R. Hamilton and her husband James Hamilton to James P. Rogers to secure the said insurance company and also the deed of trust to Alfred Caldwell to secure William H. Robinson each appears to have been duly executed and acknowledged by the said Susan R. Hamilton and her husband each and admitted to record as stated in the bill.

It appears, that on the 27th day of August 1877, the cause was further heard upon the papers theretofore read and the decrees and orders theretofore made therein, and upon the said report of commissioner (who was R. G. Barr) returned and filed July 12, 1877; and the decree then made recites, that there were no exceptions to said report, and the court decreed, that the said report be approved and confirmed. And the court in and by the same decree ascertained and found, that there are upon the separate real estate of said Susan R. Hamilton, thereinafter and with bill of plaintiffs in this causes pecially described, liens and charges in amount and priority, as follows: 1. In favor of the German Insurance Company for $11,000.00, with interest from June 17, 1876, until payment. 2. In favor of the German Insurance Company for $2,000.00 with interest from January 14, 1875, until payment. 3. In favor of the German Insurance Company for

$1,000.00, with interest thereon from May 5, 1876, until payment. 4. In favor of the German Insurance Company for $8,500.00, with interest thereon from November 15, 1876 until payment. 5. In favor of the German Insurance Company for $778.19, with interest on $753.68 parcel thereof from April 14, 1877, until payment. 6. In favor of Wm. H. Robinson for $1,300.00, with interest from March 23, 1876, until payment subject to a credit of $600.00, paid December 1, 1875. 7. And ratably—(a) In favor of Agnes Hamilton for $900.00, with interest from July 10, 1876, until paid. (b) In favor of plaintiffs for $195.75, with interest fro m February 19, 1876 until paid, subject to a credit of $40.00, as of March 11, 1876, and of 98 cents, as of December 18, 1875, and also for $159.00 with interest from May 15, 1876, until paid, subject to credits of $100.00 as of December 9, 1876, and of 80 cents as of March 13, 1876. And the court by said decree further found, that upon the following described property of said Susan R. Hamilton, that is to say—sixty yards of stage carpet, one hot air furnace, one sofa, six chairs, one green drop-curtain, twelve flats and wings, one chandelier on the stage, four sets box curtains, five hundred chairs, one lot of matting, two hundred yards of carpet, with other personal property in said Opera House, exclusive of the barroom furniture, there are liens and charges in amount and priority as follows: 1. The same lien as heretofore st ated as No. 4 of the liens against the real estate. 2. And ratably, the same liens and charges as are hereinbefore stated as No. 7 of the liens against the said real estate. The court further found that the liens and charges against said real estate are ratably liens and charges against the following personal property of the said Susan R. Hamilton, that is to say—one counter, side-board, mirror and other bar-fixtures and appliances in the bar-room in said Opera House, also one set of parlor furniture, composed of two large and four small chairs, sofa, centre-table and a piano, two chamber sets, side-board, dining-room chairs and dining-table, in the dwelling house on sixteenth street in said city of Wheeling, in which said Susan R. Hamilton resides. In the same decree the court decreed first, that unless the said liens and charges against the said real estate be paid within thirty days from the rising of

the court the same be sold by Alfred Caldwell and Wm. P. Hubbard, special commissioners appointed for the purpose, at public sale at the front door of the court-house of Ohio county &c., &c.

The terms of sale prescribed were one-fourth of the purchase-money and as much more, as the purchaser should elect, in cash, and the residue in equal installments of six, twelve and eighteen months with interest from the day of sale, the purchaser to give bonds with approved personal security for the deferred installments, &c. Second, that unless the said liens and charges on the said personal property in said Opera House, exclusive of the bar-room furniture, be paid and satisfied within thirty days from the rising of the court, or unless the said real estate sell for enough to satisfy said last-mentioned liens and charges the said personal property in said Opera House, exclusive of the bar-room furniture, shall be sold by said commissioners at public auction for cash, &c. Third, that unless the said liens and charges upon the said furniture and bar fixtures and appliances in said bar-room and upon the said household furniture be paid and satisfied within thirty days from the rising of the court, or unless the said real estate and other property sell for enough to satisfy said last mentioned liens and charges the said bar-room and household furniture should be sold by said commissioners for cash, &c. The commissioners to report their proceedings to the court. The said commissioners were required by said decree before receiving any money to give bond with good personal security in the penalty of $30,000.00, to be approved by the court, &c.

Afterwards in the forepart of October, 1877, the said defendant, Susan R. Hamilton, gave written notice to the plaintiffs, and the other parties in interest in the cause, including Agnes Hamilton and James Hamilton, that on the 15th day of October, 1877, at ten o'clock A. M. of that day, at the court-room of the municipal court of Wheeling, in the city of Wheeling, West Virginia, she would move the Hon. G. L. Cranmer, judge of said municipal court, to reverse and set aside said decree of the said municipal court rendered on the 27th day of August, 1877, in this cause, for errors in said decree in this: First. Because the claim reported in favor of

Agnes Hamilton, and ascertained by said decree as a lien upon her separate estate, is not such lien and does not constitute a lien upon said separate estate, nor is she or her estate bound for the payment of the same as appears by the record and proceedings in said cause.   Second.  Because the claim of $778.19 with interest on $753.68 part thereof from the 11th of April, 1877, ascertained as a lien upon her separate estate in said decree named in favor of the "German Fire Insurance Company," is not such lien as appears by the proceedings in said cause.   Third.  Because the two claims ascertained by said decree and the report of Commissioner Barr as liens upon her separate estate in favor of the plaintiffs are not such liens, because the plaintiffs are not entitled to any decree for their claim reported in said cause against her separate estate. Fourth.  Because the said decree is erroneous in directing a sale of real estate to satisfy any of the liens ascertained as liens upon personalty before such personalty is first exhausted for their payment.   Fifth.  Because said claims ascertained as liens upon the personal property of hers acquired by her on or about the 1st of April, 1876, are not such liens, and therefore it was error to direct a sale of such personal property for the payment thereof or any part thereof.

It further appears, that the plaintiffs, William H. Robinson and the said German Fire Insurance Company gave to said James Hamilton and Susan R., his wife, Alexander Bone, trustee, Agnes Hamilton, James P. Rogers, trustee and Alfred Caldwell, trustee, notice in writing, that on the 15th day of October, 1877, at 10 o'clock A. M. of that day at the courtroom of the said municipal court in the said city they would move the said judge of said municipal court to appoint a receiver, to take and have the charge of and collect and receive all the rents, issues and profits from all the property of every kind in the bill in this cause named and described.   It further appears, that the cause came on to be heard before the judge of the said municipal court in vacation on the 15th day of October, 1877, upon the motion of said Susan R. Hamilton to set aside the decree entered by the said court in the cause on the 27th day of August, 1877, upon said notice of said Susan R. Hamilton served upon the other parties, and upon the petition of the plaintiffs and of the defendants, the

said German Fire Insurance Company and William H. Robinson, for the appointment of a receiver in the cause, due notice of which had been given, and upon the answer of Susan R. Hamilton and James Hamilton to said petition and the affidavits filed in support of said petition and answer respectively, and the judge of said court by order and decree there made appointed Timothy W. Bliss receiver of said real estate in the bill and proceedings mentioned and of the personal estate in and upon the said real estate and belonging to said Susan R. Hamilton, &c., &c. And the judge in the same order and decree overruled the said motion to set aside the said decree of August 27, 1877, but amended the same so as to find, that the liens therein declared in favor of the German Insurance Company exist in favor of the German Fire Insurance Company of Wheeling, West Virginia, except that the amount of $778.19 therein found to be the fifth lien on said real estate, is not such lien, but is found and ascertained to be a charge on said estate in the seventh class as set forth in said decree, and to be charged upon said estate, real and personal, and paid ratably with the claims and charges of said plaintiffs and Agnes Hamilton," and further so as to provide, that the ice chest and mirror, part of the personal property mentioned in said decree are not to be sold.

It further appears, that afterwards on the 4th day of March, 1878, the defendant, Susan R. Hamilton, came into said municipal court by counsel and filed her answer to the plaintiffs' bill, to which answer the plaintiffs replied generally; and special commissioners Hubbard and Caldwell filed there report of sales made by them under the decree of 27th of August, 1877; and the plaintiffs moved, that said sales be confirmed by the court, but the said defendant, Susan R. Hamilton, desiring time to file exceptions to said report of sales, time was given her to do so. The said defendant Susan R. Hamilton in her answer admits, that she is the wife of said James Hamilton, and that she endorsed the notes made parts of the plaintiffs' bill as exhibits "A" and "B" (which are the two notes claimed by the plaintiffs), and that above her signature on the back of the note attached to and made part of exhibit "A" are written the words, "I hereby bind my separate estate for the payment of this note," and that above

her signature on the back of the note attached to and made a part of exhibit "B" are written the words " I hereby bind my separate estate for the prompt and punctual payment of this note ;" and that after she so endorsed said notes, the same were delivered by her to her said husband ; but she denies, that the said notes or either of them bind her or her separate estate, or that she or her separate estate is liable for either of said notes or the protest-charges on either, or for any part thereof.   She further answers, that each of the notes mentioned in the plaintiffs' bill as held by the German Fire Insurance Company of Wheeling, West Virginia, amounting in the aggregate to $22,500.00, contain large sums of usurious interest; that each of said notes represent sundry contracts and assurances for the loan or forbearance of money at a greater rate of interest than six per cent., and that said contracts are void as to any excess of interest above the rate of six per centum.   But she does not state, how or to what extent said notes or either of them are usurious.   And she says, that since the execution of said notes and each of them sundry payments have been made thereon at a greater rate of interest than six per cent., which payments have been credited, but a portion of which should have been applied to the reduction of the principal of each note; that she does not know, and is unable to show to the court, the amount of usury included in said notes and the amount of usury paid thereon since their execution, and she prays that the said German Fire Insurance Company may be compelled to discover upon the oaths of its officers, agents and servants the money and things really lent and all bargains, contracts and shifts or either in relation to each loan and transaction represented in their claims as charges upon her separate estate, and the interest and consideration of the same in detail for the information of the court, that the amount legally due thereon may be accurately ascertained and decreed ; and that until the same is so accurately ascertained and determined, that no sale or confirmation of sale of any property of hers be made.

She also says, that she in no other manner than by the said deeds of trust executed to secure the four notes so held by said German Fire Insurance Company encumbered her said property to said insurance-company ; and especially she says, that

she in no manner made the sum of $778.19 or any part thereof for fire-insurance premiums for insurance on said Opera House any charge, lien or incumbrance on her separate estate. She denies, that exhibit No. 8 (of the commissioner's report) dated June 3, 1875, being a note at six months to the order of Susan R. Hamilton for $900.00, is any charge upon or against her separate estate and insists, that her separate estate is in no manner liable therefor. She charges, that there is usury and compound interest in the notes filed with the plaintiff's bill and prays, that the plaintiff may be compelled to discover the money or thing really lent. She admits the execution of the deed from her husband to Alexander Bone as trustee for her sole and separate use in the bill mentioned and submits to the court, that under a proper construction of said deed the undivided half of the Opera House property thereby conveyed cannot be subjected to the payment of any debt of her husband, although she may have signed or executed the papers which, otherwise affect her other separate estate. She prays, that the plaintiffs and said insurance-company and all others under the bill filed in this cause may be held to full and strict proof of their several claims, and that she may receive all such relief as by law and the rules of equity she is entitled to. She fails to state or show any reason or excuse whatever, why she did not file her answer or make defence at an earlier day.

Special Commissioners Caldwell and Hubbard report, that after giving notice of time, place and terms of sale according to said decree of the 27th of August, 1877, they sold the real estate directed by said decree to be sold on the 29th of November, 1877, and that at said sale Charles W. Franzheim being the highest bidder became the purchaser of said realty at the price of $20,000.00, which sum the said Franzheim elected to pay and did pay in cash to the said commissioners, and that the costs of said sale including their commissions was $456.50. They also report, that after like notice they sold the said personal property in the Opera House exclusive of the bar-room furniture, on the 30th day of November, 1877, for cash for the sum of $778.43. They also report, that they sold the bar-room furniture and appliances and the household furniture after like notice at public auction for cash for the

sum of $397.00.   They also report, that the costs of the sale of said personalty including commissions was $57.50.

It appears, that the defendant, Susan R. Hamilton, filed in court her exceptions to the said report of sale filed by special commissioners Hubbard and Caldwell, which are as follows : " 1st. Because the usury named in the bill and taken for confessed in the cause has never been ascertained by a commissioner of the court.   2d. Because the amount named in the report of commissioner Barr, as the fifth lien or charge upon the separate estate of said Susan R. Hamilton is not a lien or charge on such estate.   3d. Because the claims of the plaintaiffs set up in the bill as taken for confessed, when the decree of sale was rendered, cannot be a lien or charge upon her separate estate.   4th. It is claimed by the showing of the bill that one half of said Opera House property is not liable to the charges as ascertained against it.   5th. Because the answer of the said Susan R. Hamilton was filed before said report of sale and is now before the court, and it would be improper under the allegations thereof to confirm said sale, until the matter therein alleged is disposed of.   6th. Because no advertiisement of sale or notice thereof accompanies said report. 7th. Because by said report it appears, that the sale of the personal property was not made upon the day it was advertised to be sold."

It appears, that the said real and personal property was advertised properly and sold on the days advertised.   It appears, that on the 4th day of December, 1877, the cause came on to be further heard upon the papers theretofore read and on the answer of defendant, Susan R. Hamilton, and plaintiffs' replication thereto, upon the report of William P. Hubbard and Alfred Caldwell, special commissioners, to make sale, &c., under the decree of 27th of August, 1877, as modified by the decree rendered by the judge in vacation on the 15th day of October, 1877, upon the exceptions of said Susan R. Hamilton to said report heretofore filed, an amendment to the said report filed by said special commissioners on the 3d day of December, 1877, the proof of due notice of said sales having been given, filed on the day last aforesaid, and upon the affidavit of James Hamilton ; and the court decreed, that the said exceptions be overruled, and that the sales made by the

said special commissioners and mentioned in said report be confirmed, except as to the sales of the personal property specified in the said affidavit of James Hamilton. And the court further directed the said special commissioners to pay out of the money in their hands from the sale of the real estate the sum of $456.50 the expenses of said sale of real estate including their commissions reported, and that said special commissioners pay out of the money in their hands arising from the sale of the personal property the sum of $55.84 the costs and expenses of sale of said personalty including their commissions on the sale thereof except so much thereof, as is mentioned in said affidavit. The court then decreed, that said special commissioners grant and convey to said Charles W. Franzheim, the purchaser of the said real estate by good and sufficient deed with covenants of special warranty, said real estate, the purchase-money thereof having been paid, and to deliver such deed to him. The court also directed the receiver heretofore appointed to deliver to the purchaser the possession of the said realty and personalty, excepting so much of the personalty, as is mentioned in said affidavit, now in his possession. And the court reserved all other questions for future decree.

It appears, that on the 26th day of December, 1877, the cause was heard upon the report of T. W. Bliss, receiver theretofore appointed in the cause, to which there were no exceptions, and the court decreed, that the account in his report be approved, and that $411.02, the amount remaining in his hands according to said report, be paid by said receiver to the said German Fire Insurance Company upon account. It appears, that the counsel for plaintiff consented to this decree. The account of said receiver contained in his said report is for rents and expenses after his appointment. On the 5th day of January, 1878, the Court referred the cause to R. G. Barr, one of its commissioners, to ascertain and report to the Court the amount and upon what property, if any, described in "Exhibit B," which exhibit is filed with the report of the special commissioners in this cause December 1, 1877, E. C. Jeffers has a landlord's lien. On the 21st day of February, 1878 (stated in the body of the decree to be the 20th of February, 1878,) it appears, that the court decreed, that the said special commissioners do, after the payment out

of the proceeds arising from the sale of the real estate in this cause of the costs, expenses and commissions of sale, as theretofore ordered, and of $5.00 fee for drawing deed to purchaser and $51.52 of the costs of the cause up to the 4th day of December, 1877. to be taxed by the clerk, pay the residue of said proceeds of sale of real estate to the German Fire Insurance Company of Wheeling on account of its liens against said real estate.

On the 27th day of February, 1878, the cause was further heard upon the papers formerly read, the former orders and decrees and reports of commissioner R. G. Barr, and the exceptions of E. C. Jeffers, and the Court overruled said objections and approved and confirmed the report and decreed, that special commissioners Hubbard and Caldwell pay the proceeds of the sale of the household furniture sold by them ratably to Agnes Hamilton and plaintiffs on their respective claims and to said German Fire Insurance Company of Wheeling on its claim named as the fifth lien in the decree of August 27, 1877. It further appears, that on the 4th day of March, 1878, the said municipal court made and entered the following decree in the cause :

This cause coming on to be further heard this 4th day of March, 1878, upon the papers formerly read, and the decrees and orders formerly made, upon consideration thereof it is by the court ordered, adjudged and decreed, that the sales of the personal property mentioned in the affidavit of James H. Hamilton, filed December 4, 1877, which sales were made by special commissioners Caldwell and Hubbard, and are mentioned in the report of said commissioners be and the same are hereby confirmed. It is further by the court ordered, adjudged and decreed, that the receiver heretofore appointed in this cause do deliver said personal property to the purchaser thereof, and that said special commissioners do, after paying out of the funds arising in this cause from the sale of the personal property (other than the household furniture and bar-room furniture, appliances and fixtures) the sums heretofore decreed to be paid out of the same, together with the sum of $1.66, their commission on the sale of the personal property mentioned in the said affidavit of James Hamilton, and one-third of the costs of this cause, which

have not heretofore been decreed to be paid, pay the residue of the funds aforesaid to the German Fire Insurance Company of Wheeling, West Virginia, on account of their lien in said decree of August 27, 1877, mentioned except the claim named as the fifth lien in said decree. It is by the court further ordered, adjudged and decreed, that the said special commissioners do, after paying out of the funds arising from the sale of said household furniture and bar-room furniture, fixtures and appliances, the sum which was heretofore decreed to be paid out of the same, together with two thirds of such costs of this suit, as have not before this date been decreed to be paid, pay the residue of said last mentioned funds ratably to complainants and to Agnes Hamilton on their respective claims, and to the defendant, the German Fire Insurance Company of Wheeling, West Virginia, on its claim named as the fifth lien as aforesaid.

Depositions were taken before commissioner Barr and filed in the cause and a number of certificates and affidavits, which affidavits are referred to in the said vacation order and decree of the 15th of October, 1877, the contents of which I deem it unnecessary to state here, but so much of them as necessary will be referred to in the opinion.

On the 27th day of April, 1878, the defendant, Susan R. Hamilton, upon her petition and assignment of errors therein obtained from this Court an appeal from the said decrees of the 27th of August, 1877, October 15, 1877, December 4, 1877, February 20, 1878, February 29, 1878, and March the 4th, 1878, and by reason of said appeal from said decrees this cause is before this Court for review and determination.

*Robert White and R. H. Cochran* for appellants cited the following authorities: 2 Pars. Notes & Bills 89; *Id.* 3; 1 East. 432; 2 Atk. 181; 2 A. & E. 30; 2 B. & Ad. 447; 10 Cush. 550; 8 Vt. 187; 12 W. Va. 587; 13 W. Va. 572; 35 N. Y. 680; 2 Paige 339; 8 Humph. 520; 6 Humph. 146; 2 Pat. & H. 483; 1 Wall. 655; 27 Gratt. 812; 4 W. Va. 132; 10 W. Va. 130; 9 W. Va. 680; 12 W. Va. 401; 13 W. Va. 440; 25 Gratt. 393; 29 Gratt. 728; 13 W. Va. 669; Adams Eq. Juris. § 127; 1 Story Eq. Juris. § 633; *Id.* § 642; 17 Ves. 520; 4 Johns. Chy. 21; 5 Rob. Pr. 808, 809; 7 Cranch 356; 21

Barb. 177; 45 How. Pr. 54; 56 N. Y. 640; 1 H. & M. 341; 15 Pet. 423; Code ch. 65 § 15; Acts 1872–3 ch. 207 § 2; 12 W. Va. 98; 8 Gratt. 496; 9 W. Va. 13; 12 W. Va. 402; 10 Leigh 113; 8 Humph. 520; 6 Humph. 146; Ror. Jud. Sales 66; 2 Paige, 339; 26 N. Y. 677; 4 W. Va. 603; 10 W. Va. 130.

*J. P. Rodgers and W. P. Hubbard* for German Fire Insurance Company cited the following authorities : 2 Gratt. 373; 11 W. Va. 122, 143; 4 Kent Com. 165; 1 Lom. Dig. 434; 1 Wall. 627 ; Ror. Jud. Sales (20th ed.) § 132; 9 W. Va. 690; 4 W. Va. 600; 13 W. Va. 440; 10 W. Va. 130.

*Caldwell & Caldwell* for Hughes & Co. cited the following authorities: 1 Pars. Notes & Bills 89; 1 Dan. Neg. Inst. 189, 190; 60 Eng. C. L. R. 484; 10 Ohio 371 ; 20 Ohio 518; 1 Dan. Neg. Inst. §§ 247, 248; 13 W. Va. 572; 12 W. Va. 587; Story Eq. Juris. § 1400; 25 Gratt. 481; 42 N. Y. 613; 56 N. Y. 465.

HAYMOND, JUDGE, announced the opinion of the Court:

The *jus disponendi* is an incident to the ownership of the separate estate of a married woman ; and it can only be taken away or limited by express words or by an intent so clear as to be the equivalent of express words. The liability of the separate estate of a married woman to the payment of all her debts incurred during coverture is also an incident of the ownership of such separate estate; and it too can only be taken away by express words or by an intent so clear as to be the equivalent of express words. But these incidents, liability to the payment of her debts and her *jus disponendi*, extend no further than to all her separate personal property and the rents and profits of her separate real estate accruing during coverture. The debts of a married woman, for which her separate estate is liable, are such as arise out of any transaction, out of which a debt would have arisen, if she were a *feme sole*, except that her separate estate is not bound by a bond or covenant based on no consideration, such bond or covenant being void at law, and she not being estopped in a court of equity from showing, that it was based on no consideration. The consideration, which will support an action for

her debts or contracts, so as to make her separate estate liable, need not inure to her own benefit or that of her separate estate, but it may inure to the benefit of her husband or any third party or may be a mere prejudice to the other contracting party; in short it may be any consideration, which would support the contract, if she were a *feme sole.* But her separate estate can not be made liable for the payment of any debt of her husband or of any other person, unless she has agreed to pay the same by some contract in writing signed by her or by some one authorized by her. *Radford* v. *Carvile*, 13 W. Va. 572, 653-659, 682, 683; *Patton's trustees et al.* v. *Merchants' Bank of Charleston*, 12 W. Va. 587; *Burnett et ux.* v. *Hawp's ex'r*, 25 Gratt. 481, 486; 2 Story Eq. Jur. (8th ed.) § 1,400; 1 Dan. Neg. Inst. §§ 247, 248.

In the case of *Huber* v. *Huber's adm'rs*, 10 Ohio 371, it was held, that where money comes to a wife in right of a former husband, and the second husband borrows it of her and gives her a note for it, the note is good, and after his death she may set it up in equity against his administrators. In the case of *Wood* v. *Warden*, 20 Ohio 518, it was held as follows: " 1. Where a post-nuptial agreement is made between husband and wife, by which property is set apart for her separate use, the agreement, although void in law, will be sustained in equity, unless the rights of creditors interfere. 2. A note executed by the husband to the wife acknowledging the receipt of $100.00 at her hands and promising to allow her six per cent. per annum thereon during her life, and if she survives the maker of the note, to be paid her or her heirs, *extra* of her third, will be construed such an agreement. 3. It is not essentially necessary that the consideration of the note should spring from the wife's property or earnings to entitle her to come as a creditor against the estate of her deceased husband." In the case of *The Corn Exchange Insurance Company* v. *Babcock*, 42 N. Y. 613, where a married woman having separate real estate endorses her husband's promissory note as his surety without consideration and without benefit to her separate estate, but which endorsement expresses, that for value received she " thereby charged her individual property with the payment of this note." *Held*, that an action on such endorsement, in

which is alleged the coverture of the defendant the ownership by her of separate estate, her intent to charge such estate with the note, and her endorsement in the form stated, is maintainable. * * It is not necessary, to make her endorsement a charge upon her separate estate, that the contract should describe the property to be charged. It is sufficient, that it declares her intent to charge her separate estate in general terms. See also *Smith* v. *Marsack,* 60 Eng. Com. L. R. 484. With us it is not necessary that the endorsement should specially or generally charge her separate estate. See *Murray* v. *Barlee,* 3 Mylne & Keen 209; (9 Condensed Eng. Chy. R. 8.)

In the case of *Radford* v. *Carwile,* 13 W. Va., Judge Green in delivering the opinion of the Court at page 609 says. "I submit, that the true doctrine is, that if she enters into a suretyship for a consideration, as an advance of money to her principal, it would be, were she a *feme sole,* her own debt, and according to the reasoning of Judge Comstock, her separate estate should be he held liable for such debt, as it would be for any of her other debts. But if she went surety for her husband or any one else by signing a note as surety for a just debt of her husband or such third person, and no new consideration existed for such debt, such as extension of the time of payment, such surety-debt could not be charged on her separate estate, simply because, if she had been a *feme sole,* such note could not have been enforced against her; the contract of such suretyship being in such case *nudum pactum.*"

In the case at bar, according to the allegations of the bill, the notes held by the plaintiffs in their bill mentioned and described were made by the said James Hamilton to the said Susan R. Hamilton and by her endorsed and delivered to the said James Hamilton, and by him delivered to the plaintiffs for a pre-existing debt due and owing from the said James Hamilton to the plaintiffs for and in consideration of an extension of the time of payment of said pre-existing debt to the amount of said notes, and the said James Hamilton by means of his making of said notes and the endorsement thereof by his wife, said Susan R. Hamilton for the purpose and the delivery of said notes to the plaintiffs and the acceptance thereof by the plaintiffs did obtain such extension of time of payment of said debt from the plaintiffs, which is a sufficient considera-

tion in equity to charge the separate estate of the wife for the payment thereof according to the rules of courts of equity in such cases. I think, that by the transaction the wife, the said Susan R. Hamilton, simply made herself the security of her husband for a sufficient consideration for a pre-existing debt of her husband, and that her separate estate by her endorsement of said notes and the subsequent delivery thereof to the plaintiffs became chargeable for the payment thereof in a court of equity. The said Susan R. Hamilton being a married woman could affect or charge the corpus of her real estate by a conveyance or specific lien created by deed, in which her husband united with her, and which she executed after privy examination. *Radford et al.* v. *Carwile et al.*, 13 W. Va. 572; *Patton* v. *Merchants Bank of Charleston*, 12 W. Va, 587; *Weinberg* v. *Rempe*, 15 W. Va. 829—and this she can do whether her trustee in any way unites in the deed creating the specific lien on the separate real estate or not, unless she is restrained by the instrument creating the separate estate from so doing by express words or by an intent so clear as to be the equivalent of express words. *Radford* v. *Carwile*, 13 W. Va. 572; *Weinburg* v. *Rempe*, 15 W. Va. 829; *Lee* v. *The Bank of the United States*, 9 Leigh 200.

It seems to me, that it was proper to make the deeds of trust lienors and the trustees in such deeds parties defendant in this cause, as was done, especially as the deed of trust made by the said James Hamilton and Susan R., his wife, dated the 15th of November, 1875, to James P. Rogers, trustee, to secure the German Fire Insurance Company in the prompt payment of a debt of $8,500.00 due it from said James Hamilton and Susan R., his wife, evidenced by the promissory note of said James Hamilton and Susan R., his wife, dated November 15, 1875, payable twelve months after date, with interest from date payable semi-annually in advance, negotiable and payable at the National Bank of West Virginia, at Wheeling, covered the most of said Susan R.'s personal property. The four other deeds of trust in the bill mentioned were upon the separate real estate of said Susan R. Hamilton exclusively. The plaintiffs according to the facts alleged in the bill were general creditors of the said Susan R. Their debts prior to the institution of their suit did not constitute

a lien, or charge upon the separate estate real or personal of the said Susan. They could not by any proceeding at law or equity obtain a personal judgment or decree against the said Susan R. for their debt; but they had the privilege of proceeding in equity by bill to subject the separate personal and real property of the said Susan R. to the payment of their debt according to the rules of equity in such cases. The proceeding is to a great extent similar to a proceeding in *rem*, as for instance a bill in equity to subject the estate within this State of a non-resident debtor to the payment of a debt as in the case of *Cirode* v. *Buchanan, adm'r*, 22 Gratt. 205 and 10 Gratt. 204. As is said in *Radford* v. *Carwile*, 13 W. Va. 607, the creditors of a *feme covert* have no priority over each other, unless it be acquired by superior diligence in proceeding to obtain satisfaction. A general creditor of a married woman having no lien or charge upon her separate estate prior to the institution of his suit in equity to subject such separate estate to the payment of his debt, it is not necessary or proper to make other general creditors parties to the bill. But other general creditors of the married woman, may each file his bill to subject the separate estate to the payment of their respective debts; and perhaps it might be proper and allowable for all the general creditors of the married woman to file their petitions in a pending cause praying, that such separate estate should also be subjected to the payment of their respective debts. But in all cases the general creditors would have priority of payment out of such separate estate between each other according to the time or times their suits are brought or petitions filed, that is to say, the general creditor, who first brought his suit would be entitled to priority of payment out of the proceeds of the sale of the personal property and the rents of the realty, and the second next, and so on, and the same as to date of filing petitions. The filing of petitions in a pending cause should however not be so indulged as to unreasonably delay the original plaintiff in obtaining a determination and satisfaction in his case.

A creditor of a *feme sole* by promissory note, &c., may subject the property of such *feme sole* to the payment of his debt; but generally he must do so by first obtaining a personal judgment against the *feme sole* debtor in a court of law for his

debt; and then he may issue a *fi. fa.* upon his judgment, upon which her personal property is taken under such *fi. fa.* and sold, and the proceeds thereof are applied to the payment of the judgment-debt, but with us a judgment is by statute declared to be a lien upon the lands of the judgment-debtor; and the judgment-creditor may resort to a court of equity by bill to enforce payment of his judgment-lien against the realty of his debtor. A general creditor of a *feme covert* may subject the separate estate of the *feme covert* to the payment of his debt; but he can not do so with us by obtaining a personal judgment in a court of law against the *feme covert*, but his remedy is by bill in a court of equity to subject such separate estate to the payment of his debt, not because his debt is a lien or charge upon such separate estate, any more than a debt would be against the estate of a *feme sole*, but because the debt is just, and it is just and equitable, that such separate estate should be subjected to the payment of the debt; and a court of equity affords the remedy and the only remedy by proceeding directly to subject such separate estate to the payment of the debt according to the rules and principles governing courts of equity.

This proceeding in equity to subject the separate estate of a *feme covert* to the payment of her just debts must, I think, necessarily be considered in the nature of a proceeding *in rem;* and there is surely little difference in its nature between such proceeding and a proceeding by bill in equity against a nonresident debtor to subject his estate in this State to the payment of a debt, when no attachment is sued out in the case. It is true, that in the proceeding in equity by a general creditor against a *feme covert* to subject her separate estate to the payment of his debt, a court of equity generally will not sell the *corpus* of her real estate to pay such debt, but will only subject the annual rents, &c. during the joint lives of herself and husband to the payment of such debt; but the court will sell the separate personal property of the *feme covert* and apply the proceeds to the payment of her just debt. In such proceeding perhaps all rights acquired from or under the *feme covert* to the separate property sought to be subjected in this suit to the payment of the debt pending the suit, are subject to any decree, which may be made in the suit, except so far

as a purchaser may be protected by the 14th section of chapter 139 of the Code of this State as amended by chapter 68 of the Acts of the Legislature passed February 27, 1877. See Acts of 1877 page 93. In all other respects the maxim, *Pendente lite nihil innovetur,* applies. I refer again to the said case in 22 Gratt. (*ubi supra*) and especially the opinion of Judge Moncure, who delivered the opinion of the court. A general debt of a *feme covert* is no more a lien or charge upon her separate estate before suit brought to subject it to the debt, than is a general debt of a *feme sole* a lien or charge upon her estate or property. This is manifestly so from the fact, that before suit brought to subject the separate estate of a *feme covert* to the payment of such debt she may sell and convey her separate real estate in the manner prescribed by law and sell her personal property, and the purchaser thereof will take and hold it as his own independent of such debt, whether he had notice of the existence of the debt or not.

The foregoing views and principles are established in the case of *Radford* v. *Carwile* (*ubi supra*), or are deducible from said principles and necessarily follow therefrom. From what has preceded it seems to me, that the debt of a general creditor of a *feme covert* after suit brought by said creditor to subject such separate estate to the payment of his debt becomes a *quasi* lien at least upon such separate estate and for the satisfaction thereof.

It is a general principle, that if one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund in the first instance for satisfaction, if that course is necessary for the satisfaction of the claims of both parties, whenever it will not trench upon the rights or operate to the prejudice of the party entitled to the double fund. 1 Story Eq. Juris. § 663. I think this principle may sometimes be properly applied to cases of this character as between the plaintiffs and defendant the German Fire Insurance Company especially as to the deed of trust upon real and personal property. The inferior court must be called on to say, whether in a reasonable time the rents and profits of the real estate will pay the liens charged upon it; and this discretion must first

be exercised by the court below, before this court will review the decree of sale of said court; and upon such review this Court will not reverse it, unless it appears, that the court erred in the exercise of that discretion.    *Rose & Co. et al.* v. *Brown et ux.*, 11 W. Va. 122 and 143.    If the principle as to the court renting out realty to pay lien-debts under any circumstances could be applied to deeds of trust debts, which I deem unnecessary to pass upon in this case, the court below not being asked to rent the property, it is sufficient to say, that the decree of sale was made upon bill taken for confessed, and it does not appear, that said Susan R. Hamilton or any other person claimed, that the rents and profits of said real estate would pay the lien-debts in a reasonable time or asked the court to rent out such realty to pay said lien-debts, before the said realty was decreed to be sold; nor indeed until after it was sold by the commissioners.    If it was believed by said Susan R. Hamilton, that said realty would rent for a sufficient annual rent to pay said lien-debts, and she desired that it should be rented by the court for that purpose and was advised, that the court had the right to do so, she should have answered the bill in proper time and prayed accordingly or the like, so that the court could have considered the subject and had enquiry made as to that matter before decree of sale, if it was deemed right and proper so to do.

The 8th section of chapter 132 of the Code of this State p. 630 provides, that " if a sale of property be made under a decree or order of a court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled."    A debtor cannot have a decree reversed confirming a sale of real estate for an error in the decree ordering the sale, when he has not taken the proper steps in the court below before the confirmation to review said decree of sale, except perhaps in some cases where the purchaser is a party to the suit.    *Hannah R. Beard* v. *M. Arbuckle et al supra.*    It is not pretended in this case, that the court below did not have jurisdiction of the parties and subject-matter of this suit; and if it was, such pretentions could not be sustained.

The first four exceptions to the report of sale of the realty

are because of alleged errors merely in the said decree of sale of the 27th of August, 1877.   Rorer in his work on Judicial Sales at § 132, p. 63 says: "The title acquired at a decretal sale of lands made by a court in the exercise of competent jurisdiction is not rendered invalid by the reversal of the decree for a mere irregularity or error.   This too, although the purchaser was a party to the suit, in which the decree was made.   Nor if notice be given to the purchaser at the time of the sale and before he purchased, that an effort would be made to reverse the decree, &c.   In the case of *Gray* v. *Brignardello* and *Brignardello* v. *Gray*, 1 Wall. 627, Judge Davis in delivering the opinion of the Court at page 634 says : "Numerous objections have been taken, and were taken in the court below, to the validity of the proceedings prior to the rendition of the decree, which although interesting will not be discussed, and no opinion given, as it is not necessary to decide them.   It is a well settled principle of law, that the decree or judgment of a court, which has jurisdiction of the person and subject-matter, is binding until reversed, and cannot be collaterally attacked.   The court may have mistaken the law or misjudged the facts, but its adjudication when made concludes all the world until set aside by the proper appellate tribunal.   And although the judgment or decree may be reversed, yet all rights acquired at a judicial sale, while the decree or judgment was in full force, and which they authorized, will be protected.   It is sufficient for the buyer to know, that the court had jurisdiction and exercised it, and that the order, on the faith of which he purchased, was made and authorized the sale.   With the errors of the court he had no concern.   These principles have so often received the sanction of this Court, that it would not have been deemed necessary again to reaffirm them, had not the extent of the doctrine been questioned at the bar."   See on this subject the case of *Irwin* v. *Jeffers et al.*, 3 Ohio St. 389.   Rorer on Judicial Sales at § 576 says :   Where the sale is to a third person and *bona fide* purchaser, and has been fully completed by confirmation, conveyance and payment, it will neither be avoided nor will it be set aside by reason of a subsequent reversal of the decree.   This rule is so generally recognized as to scarcely require authorites to support it.   In the language of the Illinois Supreme

Court :   'If the court has jurisdiction to render the judgment or to pronounce the decree, that is, if it has jurisdiction over the parties and the subject-matter, then upon principles of universal law acts performed and rights acquired by third persons under the authority of the judgment or decree, and while it remains in force, must be sustained notwithstanding a subsequent reversal.' "

It seems to me upon authority as well as principle, that the court below did not err in overruling the first four exceptions to said report of sale of the said real estate.

The fifth exception to said report of sale, I think, was also correctly overruled.   The answer of the defendant, Susan R. Hamilton, was filed, after the sale was made, and at the same time the report of sale was filed, and no good reason or excuse is given or pretended in the answer for not answering or defending sooner.   Parties, who have suits in court, must be reasonably diligent or otherwise expect to suffer more or less by their laches and negligence.

The difficulty raised by the sixth exception was removed before the exception was overruled.

The seventh exception does not touch the realty but I think it was not well founded.

But it is argued, that it was error in the court to confirm said sale, because the real estate sold for greatly less than its value.   It is proper to observe, that there was no exception filed to said report of sale, because the realty sold for an inadequate price.   If such an exception had been filed, it would have called the attention of the court to the fact, and the purchaser, &c., would thereby have had notice, that the confirmation of the sale was objected to on that ground, and might have filed affidavits showing, that the property had sold for a fair price.   The real property appears to have been sold by the commissioners to Charles W. Franzheim for the price of $20,000.00, which was paid by him in cash on the day of sale to the commissioners, as fully appears, he having elected to pay the whole purchase-money in cash down, as he had a right to do under the decree of sale.   It does not appear by the record, that Franzheim was a party to this suit.   He seems, so far as appears, to be a stranger to the cause, except so far as he became connected with it as a simple purchaser of

the realty. In sales made by commissioners under decrees, and orders of a court of equity the purchasers, who have bid off the property and paid their deposits in good faith, are considered as having inchoate rights, which entitle them to a hearing upon the question, whether the sale shall be set aside. And if the court errs by setting aside the sale improperly, they have the right to carry the question by appeal to a higher tribunal. *Kable* v. *Mitchell et als.*, 9 W. Va. 492. In the case at bar it does not appear, that after the sale any person offered to the court or otherwise to give a greater price for the realty than the $20,000.00. The court may in the exercise of a sound discretion either affirm or set aside the sale, where from the facts, evidence and circumstances before it it appears clearly, that the sale was made at a greatly inadequate price ; and the court may solve the question upon affidavits or depositions in connection with the fact, that a greatly larger price is offered to the court for the land and secured or offered to be secured ; or it may set the sale aside upon any evidence or fact or facts before it, which clearly shows, that the land sold at a greatly inadequate price. *Kable* v. *Mitchell*, 9 W. Va. 492. The discretion, which the court may exercise in such cases, will not authorize it to set aside the sale without sufficient cause, and a greatly inadequate price is among other things a sufficient cause.

It is true, that upon another branch of the cause, that is, upon the appointment of a receiver prior to the court acting upon the report of sale, simple certificates and affidavits of persons were filed pro and con. as to the value of said realty· These certificates and affidavits were greatly in conflict as to the value of said realty—some of them placing the value of said realty at over $20,000.00, and some at less ; and if there had even been an exception filed to said report of sale for inadequacy of price, I should not feel authorized to say, that it clearly appeared, that said realty had sold for a greatly inadequate price. Courts should be careful in setting aside the sale of realty made by their commissioners for mere inadequacy of price upon the simple opinions of men given in the shape of affidavits, especially where these opinions are materially in conflict. I think upon principal and authority, that the court below did not err in confirming the sale of said realty.

The proceeds of sale of the realty have gone where, so far as I can see, they ought to have gone. But in addition to all this Franzheim, the purchaser, is not a party to this appeal, and has not appeared by counsel before this court. The sale was confirmed on the 4th day of December, 1877, and this appeal was not granted until April 27, 1878, and took effect a short time thereafter. The decree confirming the sale directs the commissioners, who made the sale, to make to the said purchaser a deed of special warranty for said realty, and the decree was not stayed or asked to be stayed for purpose of appeal or otherwise. See on this subject *Londons* v. *Echols et als.* 17 Gratt. 15, 19, 20.

Commissioner Barr erred by the face of his report in reporting the claim in favor of the German Fire Insurance Company for $778.19 for insurance against the defendant, Susan R. Hamilton, as being a lien or charge on the separate real and personal estate of the said Susan R. Hamilton, and also the same as to the claim of Agnes Hamilton for $900.00 with interest &c. against the said Susan R. Hamilton. Neither of these two claims or debts so reported were specific liens or charges against the separate estate of the said Susan R. Hamilton. The most that can be said of these two debts or claims is, that they were simply general debts of the said Susan R. Hamilton, and no suit had been commenced or petition filed in this cause to subject the separate estate of said Susan R. to the payment thereof. For the same reason the court below in its decree of sale of the 27th day of August, 1877, erred in ascertaining and declaring, that the same two last named claims or debts were liens or charges against the separate real and personal estate of said Susan R. Hamilton. Neither of the deed of trust debts, which it ascertained and declared to be liens on the separate real estate of the said Susan R. Hamilton, was a lien upon the personal property in the Opera House, exclusive of the bar-room furniture except the debt of $8,500.00 with interest secured by the deed of trust made by James Hamilton and the said Susan R. his wife on the 15th day of November, 1875, to James P. Rogers trustee. This deed of trust conveys said last mentioned personal property to said Rogers as trustee together with the said realty to secure the last named debt with its interest. Neither of the other

deeds of trust convey this or any other of the personal property of the said Susan R. Hamilton to secure any of the several debts therein mentioned. The said deed of trust debt of $8,500.00 with interest did constitute a lien on the last mentioned personal property of the said Susan R. Hamilton first in priority ; and the plaintiffs' debt a lien second in priority. Neither of the said deed of trust debts constituted liens or charges upon the personal property of the said Susan R. Hamilton in the bar-room in said Opera House or on the personal property of said Susan R. in the dwelling-house on Sixteenth street in said city of Wheeling, in which the said Susan R. resided. None of the debts in said report or last named decree mentioned were liens or charges upon the last named separate personal estate of the said Susan R. Hamilton except the plaintiffs' debt ; none of the other of said creditors except, the plaintiffs having commenced suit or filed petitions to subject the separate estate of the said Susan R. Hamilton to the payment of their debts, and none of them constituting liens or charges upon the last named separate personal property of the said Susan R. Hamilton.

I am of opinion also, that it would have been most proper for the court below to have ordered the last named separate personal property of the said Susan R. Hamilton to be sold by the commissioners before the said separate real estate of the said Susan R. Hamilton and her said other separate personal property, for the reason that it might have sold for sufficient in amount to pay the plaintiff's debt and the costs of this suit, and thereby avoided in that event the necessity of selling the other separate real and personal property of the said Susan R. Hamilton in this suit, and especially so if her other creditors, who were parties having specific liens thereon, did not desire the enforcement of their specific liens in this cause. But it would seem from the proceedings in this cause, that the said specific lien creditors did desire, that the separate real and personal estate of the said Susan R., upon which they had specific liens, should be sold in this cause for the payment of their said lien-debts. As the real and personal property, upon which the said German Fire Insurance Company of Wheeling and Robinson had specific liens, has been applied to the specific lien-debts of said German Fire Insur-

ance Company, where it should have gone, and still leaves a balance yet due and unpaid of the said German Fire Insurance Company debt and the Robinson debt not reached, I deem it unnecessary to say further on this subject.

I think the judge of the court below erred in his vacation-order and decree of the 15th day of October, 1877, in not reversing so much of the said decree of the 27th of August, 1877, as is in conflict with the errors therein hereinbefore pointed out and in not conforming said last named decree to the views expressed touching said errors. But the errors contained in the decree of sale of the 27th day of August, 1877, are not so fundamental in their character, as to authorize us because of such errors to reverse the decree of the court below rendered on the 4th day of December, 1877, confirming the sale of said realty to Charles W. Franzheim, the purchaser, and directing the commissioners, who made the sale, to convey the same to such purchaser by deed of special warranty in the face of our statute, to which I have referred, and of the rules and principles governing courts of equity in such cases with or without such statute. As we have seen, the court below had jurisdiction of the parties and of the subject-matter of the suit, and the decree of sale though erroneous in the respects, which I have indicated, was not void because of such errors. The decree of sale was valid and binding until superseded or set aside, reversed and annulled in whole or in part by a court having jurisdiction and authority so to do because of such errors. At the time, when all the rules in this case were made by the commissioners, and at the time of the confirmation thereof by the court below the said decree of sale, under which the said real and personal property was sold, had not been superseded, set aside, reversed or annulled. In fact the appellants did not apply for and perfect this appeal, until some time after the said decree confirming said sales was rendered. If the appellant had desired to prevent a sale of her said real and personal property by reason of the errors in said decree of sale, she should not only have obtained from this court under the circumstances an appeal and *supersedeas* to said decree, but should have perfected the same, before the sale was made, or at farthest perhaps before the sale was confirmed by the court below. But this, as we

have seen, she failed and neglected to do; and under these circumstances it is now beyond the power of this court under the law to set aside said sales because merely of said errors in said decree of sale.

I see no error in the decree of the court below rendered on the 26th day of December, 1877, approving the report of receiver T. W. Bliss and directing the sum of $411.02, the amount or rent remaining in his hands, to be paid to the defendant, The German Fire Insurance Company. The appointment of a receiver does not involve the determination of any right or affect the title of either party in any manner whatever; but still an application for such appointment can only be made by those, who have an acknowledged interest, or where there is strong reason to believe, that the party asking for a receiver will recover. A manifest abuse of trust by an habitual and prospective course of dealing bringing the property into danger has been held to afford sufficient ground for the appointment of a receiver; but in no case has there been the least hesitation in making such appointment, where the party in the actual receipt of the rents and profits was shown to be insolvent. *Hannah K. Chase's Case,* 1 Bland Chy. (Md.) 206, 213. A receiver is appointed for the benefit of the interested party, who makes the application, and for any others, who may choose to avail themselves of it, and who may have an interest in the property proposed to be put into the hands of a receiver. The immediate moving cause of the appointment is the preservation of the subject of litigation or the rents and profits of it from waste, loss or destruction, so that there may be some harvest, some fruits to gather after the labors of the controversy are over. 1 Bland, Chy. 213. See on the subject of rents and profits as to mortgages *Babcock* v. *Kennedy,* 1 Vt. 457, 18 Am. Dec. 695; 1 Lom. Dig, (2d Ed.) 434; 4 Kent's Com. 165.

I see no error prejudicial to the appellant in the decree of the court below of the 21st day of February, 1878, (stated in the body of the decree to have been rendered on the 20th day of February, 1878) by which the said court directed the commissioners, who made the sales, after the payment out of the proceeds arising from the sale of the real estate in this cause of the costs, expenses and commissions of sale, as theretofore

ordered, and of $5.00 fee for drawing a deed to the pur-
chaser, and of $51.52 of the costs of the cause up to the 4th
day of December, 1877, to be taxed by the clerk, to pay the
residue of said proceeds of sale of the real estate to the said
German Fire Insurance Company, of Wheeling, on account
of its liens against said real estate.   For reasons hereinbefore
stated the court below erred in its decree of the 27th day of
February, 1878, in so far as it directed said commissioners of
sale to pay the proceeds of the sale of the said house-hold
furniture sold by them ratably to Agnes Hamilton and com-
plainants on their respective claims, and to said German Fire
Insurance Company of Wheeling, on its claim named as the
fifth lien in the decree of August 27, 1877.   Said last named
proceeds should have been directed to be paid to the plain-
tiffs on their said debt and interest as far as necessary.

The court below in the last part of its decree of the 4th
day of March, 1878, erred in so far, as it directed the said
commissioners of sale to pay the residue of the funds arising
from the sale of said house-hold furniture and bar-room furni-
ture, fixtures and appliances (after paying out of the funds
arising from the sale of the last named property the sum,
which was theretofore decreed to be paid out of the same,
together with two thirds of such costs of this suit, as had not
before the date of said decree been decreed to be paid) ratably
to complainants and to Agnes Hamilton on their respective
claims and to the defendant, The German Fire Insurance
Company, of Wheeling, West Virginia, on its claim named
as the fifth lien as aforasaid.   Such residue of said funds after
the payment of the two thirds of the costs of this suit in the
court below should have been directed by the said court to be
paid on the plaintiffs' said claim so far as necessary for its
payment exclusively, for reasons hereinbefore stated.

For the foregoing reasons the court below in its decree ren-
dered in this cause on the 27th day of August, 1877, erred in
so far as it ascertained and decreed, that the claim of the de-
fendant, the German Fire Insurance Company for $778.19
with interest on $753.68 parcel thereof from the 14th day of
April, 1877, till paid, in the report of Commissioner Barr
mentioned, was a lien or charge upon either the separate real
or personal estate of the defendant, Susan R. Hamilton, and

the same as to the claim of Agnes Hamilton for $900.00 with interest from the 10th day of July, 1876, till paid in the report of said commissioner mentioned ; and also erred in said decree in so far, as it ascertained or decreed in said decree, that said last named claims or either of them were entitled to or should be paid in whole or in part out of the proceeds of said separate real or personal estate of said Susan R. Hamilton ; and also erred in said decree in so far, as it confirmed the report of said commissioner Barr as to said two last named claims.   It is therefore adjudged, ordered and decreed, that the said decree of the 27th day of August, 1877, in so far as it ascertains or decrees in the particulars last aforesaid, be reversed, set aside and annulled.   And it is further adjudged, ordered and decreed, that the residue of said last named decree not hereinbefore reversed, set aside and annulled be affirmed, except in so far as any part of such residue is consistent with and not repugnant to the parts thereof, which are hereinbefore versed, set aside and annulled.

There is also error in the vacation-decree of the said municipal court of Wheeling rendered on the 15th day of October, 1877, in amending the said decree of the 27th day of August, 1877, so as to ascertain and decree, that the amount of $778.19 in favor of the said German Fire Insurance Company in said last named decree mentioned is a charge on the estate in the seventh class, as set forth in said last named decree, " and to be charged upon the said estate real and personal and paid ratably with the claims and charges of said complainants and Agnes Hamilton."   It is therefore adjudged, ordered and decreed, that the part of said decree of the said 15th day of October, 1877, which ascertains and decrees as last aforesaid, be reversed and annulled.

There is no error in the decree of the 4th day of December, 1877, rendered by the said municipal court of Wheeling, for which it should now be reversed, it is therefore adjudged, ordered and decreed, that the last named decree be affirmed.

There is no error in the decree of said municipal court of Wheeling rendered on the 21st day of February, 1878, (called in the body of the decree the 20th day of February, 1878). It is therefore adjudged, ordered and decreed, that the said last named decree be affirmed.

There is error in the decree of the said municipal court of Wheeling rendered on the 27th day of February, 1878, in so far only, as it directs the said commissioners, who made the sale of the household-furniture sold by them, to pay the proceeds of the sale of the same ratably to Agnes Hamilton and complainants on their respective claims, and to said German Fire Insurance Company of Wheeling on its claim named as the fifth lien in the decree of August 27, 1877. It is therefore adjudged, ordered and decreed, that the said last named decree, in so far as it directs the said commissioners, who made sale, to pay the proceeds of said sale as aforesaid, be reversed, set aside and annulled.

There is also error in the last part of the decree of the court below of the 4th day of March 1878 in so far, as it directs the said commissioners of sale to pay the residue of the funds arising from the sale of the said household-furniture and barroom furniture, fixtures and appliances (after paying out of the funds arising from the sale of the last named property the sum which was theretofore decreed to be paid out of the same, together with two-thirds of such costs of this suit, as had not before the date of said decree been declared to be paid) ratably to complainants and to Agnes Hamilton on their respective claims and to the defendant, the German Fire Insurance Company of Wheeling, on its claim named as the fifth lien as aforesaid. It is therefore adjudged, ordered and decreed, that said last part of said last named decree, so directing the said commissioners of sale to so pay the said residue of said last named funds as aforesaid, be reversed, set aside and annulled. And it is further adjudged, ordered and decreed, that the residue of said last named decree be affirmed. And it is further adjudged, ordered and decreed, that the appellees, the German Fire Insurance Company of Wheeling and Agnes Hamilton, do pay to the appellant, Susan R. Hamilton, her costs about the prosecution of her appeal in this court expended. And this court proceeding to render such decree, as the said municipal court of Wheeling should have rendered, it is adjudged, ordered and decreed, that the said claim of the German Fire Insurance Company against the defendant Susan R. Hamilton for $778.19 with interest on $753.68, parcel thereof, from the 14th day of April, 1877,

and the said claim of Agnes Hamilton against the said Susan R. Hamilton for $900.00 with interest in the report of commissioner Barr and in the said decree of the 27th day of August, 1877, mentioned are not liens or charges in this suit against either the separate real or personal estate of the said Susan R. Hamilton in the bill and proceedings in this cause mentioned. It is further adjudged, ordered and decred that neither of the deed of trust debts in the bill and proceedings mentioned constituted liens or charges in this suit upon the separate personal estate of the said Susan R. Hamilton mentioned and conveyed to James P. Rogers as trustee in the deed of trust executed by the defendants, James Hamilton and Susan R. his wife, on the 15th day of November, 1875, to secure the payment of a debt of $8,-500.00 with interest thereon from the dàte last aforesaid, therein mentioned, except the last named deed of trust, and said last named deed of trust debt constituted a lien on said last mentioned personal property and its proceeds first in priority, and neither of said deed of trust debts constituted a lien in this suit upon any of the separate personal estate not coveerd or embraced by the said deed of trust, dated the 15th day of November, 1875. It is further adjudged, ordered and decreed that the proceeds of the sale of the personal property of the said Susan R. Hamilton not covered or embraced by the said deed of trust of the 15th day of November, 1875, and mentioned in the report of Commissioner Barr and in the decree of the 27th day of August, 1877, and sold by said Commissioners of sale under the last named decree after deducting the expenses of the sale thereof including commissions heretofore allowed, should be applied first to the payment of the plaintiff's costs in this suit not heretofore provided for, and second, to the payment of the plaintiff's debt and interest thereon as ascertained and fixed by said decree of the 27th day of August, 1877, and third, the residue, if any, after making such payment should be paid to said Susan R. Hamilton. And it is further adjudged, ordered and decreed, that this cause be remanded to the said municipal court of Wheeling for such further proceedings therein to be had, as may be in accordance with the

principles settled in this opinion, and further according to the principles and rules governing courts of equity.

JUDGES GREEN AND JOHNSON CONCURRED.

DECREES CONFIRMED IN PART AND REVERSED IN PART.

CAUSE REMANDED.