## Barton *vs.* Beer.

On the 11th of April, 1860, the defendant gave her promissory note, in renewal of a note given by her in 1859. At the time of giving both notes she was a married woman, doing business in her own name, and the debt was for cigars bought by her at the date of the first note, for her business, and as a part of her stock in trade ; and it was admitted that they were her separate property at the time of giving the second note. *Held* that the defendant had capacity to give the new note, and was liable upon it. Morgan, J. dissented.

The power to carry on a trade or business includes the ability to make all contracts incident to such trade or business.

The act of March 20, 1860, concerning the rights and liabilities of husband and wife, by exempting the husband from all liability upon, or in respect to, bargains or contracts made by the wife in or about the carrying on of her trade or business, recognizes the ability of the wife to make executory contracts which will be valid, as against her, notwithstanding her coverture.

Barton *v.* Beer.

APPEAL from a judgment of the Onondaga county court, affirming a judgment of a justice of the peace.

The action was on a promissory note given by William Beer and Aveline Beer his wife, dated April 11th, 1860, which was given in renewal of a note given in 1859. At the time of the giving of both notes the defendant was doing business in her own name, and the debt was for cigars bought by her at the time of the giving of the first note, for her business, and as a part of her stock in trade. After the giving of the note in suit she sold out her stock of goods, "including the cigars," and took notes in her own name. The justice gave judgment for the plaintiff, which was affirmed by the county court of Onondaga county.

*J. C. Hunt,* for the appellant.

*D. Pratt,* for the respondent.

ALLEN, J. At the time of the purchase of the cigars for which the first note was given, the defendant Aveline being then as now a married woman and living with her husband, had not capacity to contract, and the contract of purchase was void and vested no property in the cigars, in her. Her note was also void. Had the cigars come to the possession of the husband, or if they were bought by the wife with his knowledge and assent, he might have been liable for them. But the cigars were not applied to the use of the husband, and the debt has at no time been treated as his debt. On the contrary, the admission is that at the time of the giving of the note in suit, " the stock of goods and cigars were the separate property" of the feme defendant. The sale in 1859 being void, vesting no property in the goods in the wife, the cigars, although in her possession under this void contract, remained the property of the plaintiff, for which he might have brought trover, and the contract of sale would have been no defense. In *Smith* v. *Plomer,* (*K. B. 52 G. 3d,*) cited in

2 *Saund. R.* 47 *b, note* (*f*), and in *Peake's Ev., Am. ed. of* 1824, *p.* 497, it was held that when the person to whom the goods were let was a married woman living separate from her husband, she was unable to give any property in them, and that therefore such a bailment did not deprive the real owner of his action of trover. (*S. C. reported* 15 *East,* 607.) There was no evidence in the case before us that the husband had adopted the contract, and the admission negatives any presumption that he had at any time adopted or assumed the contract, or exercised any control over the goods.

The law of 1860 (*Sess. Laws,* 157, § 2) relieved the defendant Aveline from her disabilities, and enabled her to carry on her trade or business and perform any labor and services on her sole and separate account. The power to carry on a trade or business includes the ability to make all contracts incident to such trade or business. And the same act, (§ 8,) by exempting the husband from all liability upon or in respect to bargains or contracts made by the wife in or about the carrying on of her trade or business, recognizes the ability of the wife to make executory contracts which will be valid as against her notwithstanding her coverture. At the date of the note in suit, then, April 11th, 1860, the feme defendant was engaged in carrying on her business of a grocer, under the act of March 20th, 1860, and was in possession of the cigars, which were the legal property of the plaintiff. She was then capacitated to buy them, and did give the note in suit for the purchase price of them, and thus by that promise to pay acquired a valid title to the cigars. And, as it is admitted in terms, we must take the fact to be that the cigars became and " were her separate property," and a part of her stock in trade. It is urged that the cigars became, by the purchase in 1859, the property of the husband. If this were so, then there was no consideration to uphold the note, given in April, 1860, as against the wife. But the difficulty is, this objection to the plaintiff's right to recover is admitted away. There was no evidence, and the case was decided upon

Barton *v.* Beer.

the admissions of the parties, and the admissions are conclusive against this view of the transactions in 1859. The same act, before referred to, declares that a married woman may sue and be sued in all matters having relation to her separate property, in the same manner as if she were a feme sole. By § 114 of the code, she could sue and be sued alone and without her husband in all actions relating to her separate estate. So that this section (7) of the act of 1860 was not wanted for that purpose, but the intent was to make the forms of procedure for and against married women, in all actions in which they could sue or be sued alone, the same as they would be in actions for or against any other party not under any disability ; and without giving it this effect the section has no meaning, and works no change in the law, or in the form of action or course of procedure, in the actions concerning the separate property of a married woman. The act may be, as suggested, and very likely will prove to be, very mischievous and pregnant with much evil, but that must be remedied by the legislature. Whenever femes covert may sue and be sued as femes sole, they are sued by the same process and in the same form, and the same form of judgment given against them as if they were not covert. (*Drury* v. *Mazarine*, 1 *Ld. Raym.* 147.) Indeed, the capacity conferred upon her to contract liability and incur debts creates a necessity of a corresponding liability to actions. For the evil would be greater than it otherwise would be if she may impose upon the public by making contracts for which neither she nor her husband is liable. If she acts as a feme sole, she ought, in justice to the public, to be subjected to all the duties and liabilities of a feme sole. (*Per Lord Loughborough*, 1 *H. Bl.* 349. *Walford* v. *Dutchess De Pienne*, 2 *Esp. R.* 554.)

The judgment must be affirmed.

BACON and MULLIN, Justices, concurred.

Barton *v.* Beer.

MORGAN, J. (dissenting.)  The act of 1860, (*Laws of* 1860, *p.* 157,) in relation to the rights of married women, is a radical innovation upon the legal and equitable doctrines of the common law, as well as upon the prior legislation of this state.  It could hardly be expected that the legislature would confer upon a married woman the right to " bargain, sell, assign and transfer" her separate personal property, and to " carry on business on her sole and separate account," and retain the earnings of her business as her separate property, without charging her with corresponding responsibilities.

The question in this case arises mainly out of the provision contained in § 7 of the act of 1860.  That provides that she may sue and *be sued* in all matters having relation to her separate property, " in the same manner as .if she were sole."  And by § 8, her husband shall not be bound nor shall his property be made in any way liable in respect to her sole or separate property.

I admit that it is difficult to fix any limits to her responsibility under these sweeping provisions.  If she may carry on business as a *feme sole,* and make bargains to sell her personal property, she may doubtless take business notes payable to herself, and collect them in her own name.  But it is said, in § 7, that she *may be sued* in all matters having relation to her separate estate, " in the same manner as if she were sole ;" and hence it is contended that she is liable upon her *executory* contracts for the purchase of property, and like a single woman may be sued upon them ; and that a *personal* judgment may be pronounced against her, in the action.

But this statute does not, in express terms, say that she may purchase property on her *personal* credit, or that she may be sued upon her *personal* responsibility, in the same manner as if she were sole ; but it says she may be sued in the same manner " in all matters having relation to her property."

The suit must therefore have relation to her property.  In *Yale* v. *Dederer and wife,* (18 *N. Y. Rep.* 265,) it was held

Barton *v.* Beer.

that a married woman does not charge her separate estate by the execution of a promissory note with her husband and as his surety, not for her own benefit *or the enhancement of her estate;* and that the statutes then in force, (*ch.* 200 *of* 1848, *and ch.* 376 *of* 1849,) "for the more effectual protection of the rights of married women," did not remove their legal incapacity to contract debts. The subsequent act of 1860 did not make them *personally* liable. But it enabled them *to trade and traffic,* and thus to create a debt, *in any matter,* having relation to their own property, and thereby charge their property with its payment. And it expressly provided that a married woman might be sued as a *feme sole* (that is, without her husband,) in a matter having relation to her property. But it does not necessarily result that she is liable in the same manner as a *feme sole,* upon her executory contracts, where the suit is brought to obtain a personal judgment.

The contract must doubtless have relation to her separate property, to create the liability; but I think the whole object of the statute is attained, when the suit is brought against her *in her own name,* to charge her property with the debt.

And I think the statute may be construed so as to give her the ability to acquire property without making her *personally* liable as a *feme sole* upon her notes which she is induced to give in exchange for it.

Those who deal with her must take such an obligation as will charge her separate property; and as to such an obligation, she may be charged in an action, in the same manner as though she were a *feme sole.* But the judgment must be made a charge upon her property, and not against her personally.

If the legislature intended to make her liable upon her *executory* contracts of purchase, the same as a *feme sole,* it would have been very easy to have said so. And it is somewhat remarkable that no provision is made for her personal liability in such a case.

Barton *v.* Beer.

At common law no personal judgment could be rendered against her for a debt contracted during *coverture ;* but where she had a separate estate, her obligations, which she was authorized to incur on the faith of it, were enforced as a charge and never as a personal liability. (*Rogers* v. *Ludlow,* 3 *Sandf. Ch. R.* 104. *Coon* v. *Brooh,* 21 *Barb.* 546.)

The debts which she may incur *in respect to her property,* under the provisions of this act, must be deemed to be incurred on the faith of it, and for its benefit, and must therefore be enforced as a charge, and not as a personal liability.

If we allow the statute of 1860 to abrogate all those rules which were intended to protect a married woman from the consequence of a personal judgment, the act, instead of being for her benefit, would subject her to very serious consequences.

She might be cited before a judge or referee and subjected to a harassing examination on the return of an execution against her property. This would lead to motions to punish her for contempt, and to relieve her from personal attendance, for reasons which need not be stated. The legislature could hardly have intended this.

In my opinion, we can give effect to the statute, by restricting suits against her to such as are of an equitable nature to recover debts which the statute authorizes her to contract on the faith and credit of her separate property.

The judgment of the county court and of the justice should be reversed.

Judgment affirmed.

[Onondaga General Term, April 8, 1861. *Bacon, Allen, Mullin* and *Morgan,* Justices.]