## SUPREME COURT.

THE FIRST NATIONAL BANK OF CANANDAIGUA agt. MARTHA A. GARLINGHOUSE.

A *married woman,* may under the statutes—1860–'62, *confess a judgment* to obtain and secure a loan of money to carry on her separate business.

Where she is expressly authorized by the satutes, " to sue and be sued, in the same manner as if she were sole," she is impliedly authorized to use the requisite and ordinary agencies of suing and being sued; that is, to appoint an attorney for that purpose. And when she confesses a judgment, she submits to be sued in that form and manner.

(JOHNSON, J., *dissenting : Holding in effect, that the courts have no power nor authority to extend the release of disabilities of coverture at common law, beyond those expressly prescribed by the statutes.*)

*Monroe General Term, December,* 1868.

*Present* E. DARWIN SMITH, *P. J.;* JOHNSON; JAS. C. SMITH, *Justices.*

APPEAL from order of special term setting aside judgment.

The defendant is a married woman and confesses the judgment under the Code in due form, as though she were a *feme sole.*

Motion was made to set aside such judgment on the ground that a married woman could not confess a judgment. This motion was granted at special term, when the justice delivered the following opinion :

JOHNSON, J. This judgment is at least voidable at the election of the defendant, if not absolutely void. (*Britton* agt. *Wilder,* 6 *Hill,* 242 ; *Watkins* agt. *Abrahams,* 24 *N. Y. R.* 72 ; *Roorback* agt. *Stebbins,* 33 *How. Pr. R.* 278.) The first case cited was before any of the disabilities of married women had been removed by the acts of the legislature for the bet-

ter protection of married women, and lays down the rule as it existed at common law. The two other cases decided in the court of appeals, are claimed justly by the plaintiff's counsel, to have arisen and been decided, upon judgments confessed previous to the statutes of 1860 and 1862, by which married women are authorized to sue and be sued in courts of law, and are made liable in such cases to have personal judgments entered against them for damages and costs.

It is claimed by the counsel that these two latter statutes have so far removed the disabilities that a married woman was under at common law, as to enable her to give judgment against herself in any manner known to the law for allowing and obtaining judgments, and bind herself by such judgments. By these statutes a married woman may sue and be sued in, respect to her own separate property and interest, and in either case, the adverse party may have judgment against her personally, if he is entitled to such judgment. But the statute has gone no further.

It has not authorized a married woman to confess a judgment without action.

Here was no suit. The plaintiff had brought no action against the defendant, and none was pending between them. The judgment was entered up under that provision of the Code which allows a judgment to be entered without action. She had not sued nor had she been sued, in any sense, legal or otherwise. The judgment is not, therefore, within the terms of the statute, nor within its spirit or intent.

The disabilities of a married woman still exist, in all their force, except so far as they have been removed by statute.

And although they may now carry on business on their own account and in that, contract binding obligations, yet they cannot bind themselves as accommodation indorsers for others, or by other accommodation obligations. This, I apprehend, is well settled.

The statute not having authorized a married woman to confess a judgment without action, the defendant is not bound

by her confession, and the judgment and the execution issued thereon, must both be set aside at her request, and upon her motion, with costs of motion.

In the other judgments in which the defendant is impleaded with other defendants, and in which judgments have been taken against her by default, by the plaintiff, a good defense is shown upon the merits, and a reasonable excuse is given for not appearing to defend before such judgments were entered, and before the time for answering had expired.

In the second, third and fourth of said actions, it appears by the affidavits on the part of the defendant, that the defendant was an accommodation indorser for some of the other parties defendant. And in the fifth action the judgment is upon a promissory note to which the defendant is not a party in terms, and upon which her name does not appear, nor does anything appear on the face thereof to bind her in any respect.

The opposing affidavits tend to show in some respects, a different state of facts upon the merits; but courts do not ordinarily in such cases, examine or try the merits on affidavits. The merits are much more satisfactorily examined and tried upon an issue made by the pleadings, and in the usual manner of trying and determining issues of fact. It can do no harm to any one, to have the default opened, and the defense interposed, so that the question can be fairly tried and determined. On the contrary such a course is manifestly in furtherance of substantial justice. Each of the four cases last mentioned seem to me to appeal very strongly to the court for a favorable exercise of its discretion in behalf of the defendant, especially in view of the fact of her coverture, and her legal disabilities springing therefrom.

The judgments and executions in each of these cases must therefore be set aside, and the defendant have leave to put in her answer in each action in twenty days after entry of the order, on payment of ten dollars cost of opposing motion.

From the order setting aside such judgment the plaintiff. appealed to the general term.    The appeal was argued by:

E. G. LAPHAM, *for appellant.*
GEO. F. DANFORTH, *for respondent.*

*By the court,* E. DARWIN SMITH, J.    The order at special term setting aside the judgment in this action, was made and based, as appears from the opinion of the learned judge then delivered, upon the express ground that a married woman could not confess a valid judgment.    This was undoubtedly so at common law.    (*Britton* agt. *Wilder,* 6 *Hill,* 242 ; 3 *Term,* 151 ; *Watkins* agt. *Abrahams,* 24 *N. Y. R.* 72.)    The reason for this rule at common law is quite apparent.    A married woman was under disability like an infant.    She could not confess a judgment, because she could not appoint an attorney.    She could not sue or be sued alone at law. She could not make a valid personal contract.    She had no separate legal estate.    No judgment could be given against her in *personam.*

These disabilities doubtless remain, except so far as they have been removed by modern legislation.

The act of 1848 and 1849 took away the rights of the husband in respect to the wife's personal property, converted her separate equitable estate into a legal estate and allowed her to take property by inheritance, gift, grant and devise or bequest from any person other than her husband, and to receive the rents and issues of her separate property, and to sell, devise and convey such property in the same manner and with like effect as if she were unmarried, and exempted such property and its proceeds from all liabilities for the debts of the husband.    In no other respects did these acts take away the common law disabilities of coverture.    The property of married women after the passage of these acts remained in her hands, subject to the control of the courts in equity, and

the courts of equity alone, precisely as the same stood before their enactment. But the act of 1860 goes much further.

Section two of this act authorizes married women to bargain, sell, assign and transfer her separate personal property and carry on any trade or business, and perform any labor or service on her sole and separate account; and declares that the earnings of any married woman from her trade, business, labor or service should be her sole and separate property and might be used and invested in her own name.

As under this act any married woman may engage in and carry on any kind of business in the same manner as if she were unmarried, or as any man can do, she is thereby necessarily relieved of her disability as a married woman so far that she may make any valid contract for the sale or purchase of property and in the borrowing or loaning or investing money for her separate use and benefit, as much as if she were a single woman. Her contracts in respect to her separate property or trade and business, are valid legal contracts as much so as if made by her husband on his own account.

To give her the full benefit of these provisions, in respect to her separate estate and to the carrying on of any trade or business, section seven of said act as amended in 1862, further provides, that "any married woman may while married, sue and be sued in all matters having relation to her sole and separate property, or which may hereafter come to her by descent, devise, bequest, purchase or the gift or grant of any person in the same manner as if she were sole."

While, as Judge PORTER says, in *Owen* agt. *Cawley* (36 *N. Y. R.* 603), the antecedent disability of a married woman arising from the conjugal relation was not wholly removed, they were necessarily so far modified as to secure to her the beneficial enjoyment of the new interest she was permitted by law to acquire. The cases of *Yale* agt. *Dederer* (22 *N. Y. R.* 461; *Ballin* agt. *Dillaye* (35 *Id.* 35), and others, hold, that she may contract debts now in respect to her legal or separate estate pricisely as she could have done for the benefit of the

estate before those acts, and that such debts are valid legal debts and the estate is legally liable for such debts.

Upon the face of the confession of judgment in this action it appears, and the fact is verified by the oath of the defendant, that said judgment was confessed for the following cause of action : "that on the 13th day of January, A. D., 1868, I the said Martha A. Garlinghouse, executed and delivered to the said First National Bank of Canandaigua, a promissory note dated on that day, for the sum of seven thousand five hundred dollars, payable sixty days after date at said bank. Such note was given by me for that amount of money loaned to me that day by the said bank, and is now wholly due and unpaid." The judgment was confessed on the 16th of March, when this note fell due, and there is annexed to it a stipulation signed by the plaintiff giving time for the payment of said debt, and also for the further loan of one thousand dollars for the purpose of purchasing new stock in her trade and business, and no other purpose. It also clearly appears from the affidavits used on this motion, that the said defendant at the time of the confession of said judgment and for several years immediately previous thereto, was engaged in carrying on a separate business in her own name at the village of Canandaigua, of manufacturing and selling spirituous liquors. That she had done a large amount of such trade and business and kept a bank account with the plaintiff's bank, and that the said money was there placed to her account in said bank and the same was drawn out by her and used and employed by her in carrying on her said separate business; and that she had a separate legal real estate ; and that said judgment was confessed to give the plaintiffs a lien thereon for the money so loaned to her.

It thus clearly appears that this judgment was confessed to secure a loan of money made to the defendant to enable her to carry on her separate trade and business, and to get time for the payment of such loan and further advances, and this makes the debt one for which within the express letter of

section seven of the act of 1860, as amended in 1862, the defendant could clearly be sued *in the same manner as if she were sole.* If she were a sole woman she could unquestionably confess a judgment for such debt as well as a man, and it would be a valid judgment at law.

But under the act of 1862, whatever may have been the construction of the act of 1848–'49 and '60, a judgment *in personam* may now be rendered against a married woman in such case and for such cause. Section seven of the act of 1862, is as follows: a married woman may be sued in any of the courts in this state, and when a judgment shall be recovered against a married woman the same may be enforced by execution against her sole and separate estate in the same manner as if she were sole. This makes her separate property subject to execution at law the same as if she were sole, for she may be sued in law courts having no equity jurisdiction, which clearly could not have been done prior to the acts of 1860 and 1862. (*Barton* agt. *Beer*, 35 *Barb.* 78; *Morrill* agt. *Cawley*, 17 *Abb.* 76; *Klen* agt. *Gibney*, 24 *How.* 31.)

It seems to me, therefore, that the necessary effect and intent of the acts of 1862, following and amending 1848, 1849 and 1860, is to remove all the disabilities of coverture, so far as to enable a married woman to hold separate property and to carry on trade and business, and make all the ordinary and incidental contracts relating thereto, and to be sued in respect to such contracts in all respects as though she were in fact unmarried. I cannot see, therefore, why she may not give a security for a debt contracted for her use and benefit by a judgment confessed, as well as a judgment obtained *in invitum*, as much so as if she were a man or a sole woman.

The confession of a judgment is but one of the ways and processes, one "*manner*," by which a person is sued. It is a voluntary submission to the jurisdiction of the court giving by consent and without the service of process, what could

otherwise be obtained by summons and complaint and other formal proceedings. A person who confesses a judgment submits to be sued in that form and manner. The right to sue and be sued implies the right to use and employ and to be subjected to all the processes by which the judgments of courts are obtained.

I can see, therefore, no reason why a narrower construction of these acts and the rights conferred by them should be adopted. A married woman in respect to her separate property is placed by these acts upon the same plane with her husband or any other man. It was clearly the intention of the legislature, I think, to liberalize the law in respect to her and give her all the rights, and subject her to all the liabilities of single women in respect to her separate property and any trade and business in which she might engage. The right to confess a judgment is one of these rights. It may be quite essential to her interest to be able to give such a security to her creditor, as it obviously was in this case. When she is expressly authorized " *to sue and be sued in the same manner as if she were sole,*" she is impliedly authorized to use the requisite and ordinary agencies of suing and being sued, that is, to appoint an attorney for that purpose, and when superadded to this removed disability, she is authorized also to contract debts in her own name for her separate use and benefit, and is subjected to a judgment *in personam,* all the reason which existed at common law why she might not confess a judgment in those cases when she might be sued, is removed, and she stands in that particular on the same ground as if she were unmarried in fact.

But if this were doubtful, I think it quite clear that this court is not bound to set aside such a judgment. The courts of England at common law, refused to set aside a judgment confessed by a married woman when she lived by herself and acted as a *feme sole.* (1 *Salk.* 400; *Graham,* 772.) And this court has so held in a well considered case, *Knickerbacker*

agt. *Smith* (16 *Abb.* 241), in a case where the judgment was entered up in 1858.

That this court was not bound to set aside a general judgment against a married woman upon her mere motion for that purpose.

I think the order setting aside the judgment in this case should therefore be reversed.

J. C. SMITH, J., concurred.

JOHNSON, J., dissented, adhereing to his opinion at special term.

Order reversed.