## CHARLESTON.

WILLIAMSON v. CLINE et ux.

Submitted January 10, 1895—Decided February 2, 1895.

1. WIFE'S SEPARATE ESTATE—MARRIED WOMAN—PERSONAL JUDGMENT—JURISDICTION.

By reason of Chapter three, Acts 1893, a court of law has jurisdiction to entertain an action and render personal judgment against a married woman upon a contract made during coverture, binding her separate estate.

2. WIFE'S SEPARATE ESTATE — MARRIED WOMAN — BOND — SURETY.

A bond executed by a married woman as surety for a debt of her husband is valid to bind her separate estate.

3. WIFE'S SEPARATE ESTATR—MARRIED WOMAN—CONTRACT.

A contract of a married woman, made since the enactment of

chapter 3, Acts 1893, such as binds her separate estate, may be enforced against her separate estate, whether owned by her at the time of the contract or afterwards acquired, the same as if she were a *feme sole*.

4. WIFE'S SEPARATE ESTATE—JUDGMENT—CONTRACT.

A judgment on such contract under said act binds as a lien the *corpus* or entire body of her estate in realty owned by a married woman.

5. VALUABLE CONSIDERATION—FORBEARANCE TO SUE.

Forbearance to sue being valuable consideration, if a creditor take from his debtor and a surety a note giving further time for payment, that is a valid consideration to bind the surety.

6 VALUABLE CONSIDERATION—"FOR VALUE RECEIVED."

The words, "for value received," in a note, *prima facie* establish a valuable consideration, where it becomes necessary to prove such consideration.

7. OBLIGATION UNDER SEAL—FAILURE OF CONSIDERATION.

An obligation under seal imports valuable consideration, requiring no proof of the consideration, and neither at common law nor under section five, chapter one hundred and twenty six of the Code can want of consideration be shown in defense of an action on it. But, as to failure of consideration, that may, under that section be shown, though not at common-law. There is a difference between want and failure of consideration in such case.

8. MARRIED WOMAN—WANT OF CONSIDERATION—OBLIGATION UNDER SEAL.

A married woman may, in an action at law or in equity, plead want of consideration against a sealed obligation given by her during coverture.

9. OBLIGATION UNDER SEAL—MERGER.

Taking an obligation under seal for a simple contract debt merges it in the obligation, and thus extinguishes it, as the taking of a security of higher dignity extinguishes inferior securities for the same debt.

N. C. PRICKITT for plaintiff in error, cited Code of 1868, chapter 66, page 447 (Code 1887, chapter 66 same); Acts 1891, Ch. 109 (Code 1891, Ch. 66 is same); Acts 1893, Ch. 3, 43; Constitution, Art. VI, Sec. 43; 14 Gratt. 24, 27; 19 W. Va. 366; 13 W. Va. 572; 12 W. Va. 587; 23 W. Va. 236; 10 W. Va. 171; 20 W. Va. 571, 580; 21 W. Va. 658; 29 W. Va. 385; 22 W. Va. 708; 38 W. Va. 404 (18 S. E. Rep. 561); West Va. Bar, No. 10 (Nov. 1894) p. 231; 21 W. Va. 626; 13 W. Va. 609; 3 W. Va. 561; 5 Rob. Prac. 606, 611; 1 Dan-

iel's Neg. Inst. chap. 7, § 161, p. 165; 3 Am. & Eng. Ency. of Law 836, 831, n. 3; 1 Waits Action & Def. p. 91, 96, § 6.

J. A. WOODDELL for Margaret Cline defendant in error.

*Enactment of separate property acts do not give married women capacity to contract generally.*—15 S. E. Rep. 997; 14 Am. and Eng. Ency. 609 note 8; 18 Am. Rep. 607; *Id.* 615;. 20 W. Va. 579; 22 W. Va. 708, 714.

*Not liable at law upon her suretyship contracts unless such contracts are authorized by statute.*—25 Am. Rep. 14 1; 10 Neb. 83, 86; 58 Am. Rep. 268, 269; 7 L. R. A. 211; 63 Ill. 59,. 60; 75 Ill. 574; 13 W. Va. 608.

*Not authorized to contract generally by reason of enactment of s. 15, c. 3, Acts 1893.*—ss. 13 and 15, c. 3, Acts 1893; 1 Am. Rep. 601; 10 W. Va. 171.

*No indebtedness created unless she owns separate property or has separate business.*—24 Am. St. Rep. 702.

*Writing obligatory sued upon void as to Mrs. Cline.*—13 W. Va. 609; 19 W. Va. 391.

BRANNON, JUDGE:

Eunice Williamson brought an action of debt in the Circuit Court of Jackson county against Samuel Cline and Margaret Cline, based on a single bill, made September 16, 1893.

Margaret Cline came in with a plea to the effect that when the single bill was executed she was the wife of Samuel Cline, living and cohabiting with him, and still so remained; and that she never received any consideration for which the single bill was executed, and she did not, at the execution of it, owe the plaintiff; and that the debt was one of her husband's, contracted for his sole use and benefit, prior to the date of single bill; and that she was only surety for him in said single bill. Objection was made to this plea, but it was overruled, and the plea received, but no replication was made to it, and judgment was rendered against the husband for the debt, but in favor of Margaret Cline absolving her from the debt.

Eunice Williamson brought this writ of error.

The sole question is whether the married woman was lia-

ble under this single bill. If she was, the plea of coverture filed by her was no bar to the action, and the court erred in overruling the plaintiff's objection to it, and in rendering judgment upon it in her favor; and, if she was not liable, the plea was properly received, and judgment rendered upon it. *Duval* v. *Malone*, 14 Gratt. 24, 27.

What is commonly called the "Married Woman's Act" has undergone material legislative amendment since its first enactment in chapter sixty six of the Code of 1868. Up to the enactment of chapter three, Acts 1893, a court of law had no jurisdiction to render judgment upon the contract of a married woman, and the plea of coverture filed in this action would have at once ousted the law court of the case. Only a court of equity had jurisdiction to enforce against her separate estate such contracts as bound it. *White* v. *Manufacturing Co.*, 29 W. Va. 385 (1 S. E. Rep. 572). And, in absence of a specific lien by deed of trust or for purchase money, not the *corpus* of her real estate, but only its issues during coverture, could be subjected in equity, and there could be no personal decree against her even in equity. *Hughes* v. *Hamilton*, 19 W. Va. 366, points 10, 12; *Turk* v. *Skiles*, 38 W. Va. 404, point 4 (18 S. E. Rep. 561). While her personal property could be sold outright for debts under contracts that bound it, yet it could not be done by judgment at law and execution, as in the case of persons generally, but only in equity. You could not subject the smallest item of her chattels without resort to an expensive chancery suit. This was a serious inconvenience to her creditors, even a prejudice to herself. So far as concerns the jurisdiction of courts of law to enforce her contracts against her separate estate, section fifteen of chapter sixty six of the Code, as found in chapter three, Acts 1893, makes a radical revolution. By it a "married woman may sue and be sued in any court of law or chancery in this State, which may have jurisdiction of the subject-matter, the same in all cases as if she were a feme sole; and any judgment rendered against her in any such suit shall be a lien against the *corpus* of her separate real estate, and an execution may issue thereon and be collected against the separate personal property of a mar-

ried woman as though she were a feme sole." Under this section her status or condition of coverture has no influence upon jurisdiction. It depends on the subject-matter. If that be such as is cognizable at law, she may be sued in a court of law like any one else; if cognizable in equity, she may be sued in equity. Hence, as to jurisdiction of the court to entertain this suit, as the court of law had jurisdiction of debt upon a single bill for a specific sum of money, the plea presented no bar.

But does the single bill, executed by the wife, not for any consideration benefiting her or her separate estate, but only for a debt of her husband as his surety, bind her? It is urgently insisted that it does not. What contracts bound a married woman's separate estate under the law as found in chapter sixty six in the first edition (1868) of our present Code, before its amendment and re-enactment in chapter three, Acts 1893, our present law on the subject? What contracts, I repeat, bound a wife's separate estate under the Code of 1868? I need not and ought not enter into a wearisome discussion of this subject, for our function in these days upon this subject, as upon many other subjects, is to apply the doctrine of *stare decisis*—stand to decisions, rather than enter into prolix disquisitions, admissible when the questions were new, as if we were hewing out the way through an untouched forest. Courts have widely differed as to what kind of contracts bound separate estate, and elaborate discussion has been given the subject elsewhere and in this State. It was settled, under the separate estate chapter in the Code of 1868, by the cases of *Patton* v. *Bank*, 12 W. Va. 587; *Radford* v. *Carwile*, 13 W. Va. 572; *Hughes* v. *Hamilton*, 19 W. Va. 366; *Camden* v. *Hitcshew*, 23 W. Va. 236; and *Dages* v. *Lee*, 20 W. Va. 584—that a married woman, as to separate estate, is regarded as a single woman, with right to dispose absolutely of her personalty, and of the rents and profits of her realty during coverture, as if single; that this right of disposal (*jus disponendi*) is an incident to the very ownership of separate estate; and that the liability of such estate to all her debts incurred during coverture is also an incident to such ownership, making her personalty and the

rents and profits during coverture, but not the corpus of her realty, liable for such debts. Under the law as so settled in this State, all debts contracted by a married woman so bound her separate estate, no matter out of what transaction arising, just the same as if she were single, except a bond or covenant based on no consideration. It was not necessary, to bind her estate for her debts that the consideration inure to her own individual benefit, or of her separate estate, as if it inured to the benefit of her husband, or any third party; or to the prejudice of the person contracting with her, it was sufficient as a consideration; but to bind her estate for the debt of another she must do so by writing, signed by her. Thus she could bind her estate as surety for her husband. Then, according to the law as it was under the original chapter sixty six of the Code, the single bill in this case would have bound the separate estate of Margaret Cline.

Has subsequent legislation changed it? The act of March 14, 1891 (Acts 1891, c. 109) amending and re-enacting chapter sixty six of the Code, did make section twelve of that chapter work radical change in the law, as above stated, touching the obligation of a married woman's contracts upon her estate, limiting their validity and obligation to certain cases therein specified, and thereby narrowing very much her power to bind her separate estate by contract; but I need say nothing more relative to that act, because the single bill involved in this case was not executed while it was in force, and it was repealed by the amendment of Code, chapter sixty six, by Acts 1893, chapter three. What, then, is the effect of the last named act upon the power of a married woman to subject her separate estate by contract to debts? Did it narrow her power to do so? Its purpose not to narrow, but to widen the liability of her estate is spoken by both letter and spirit of the act. Her capacity to contract and bind her estate has been for years, under legislation and decision here and elsewhere, save the act of 1891, widening, and this last act breathes the spirit of the intention of the legislature to make her, in this regard, a single woman, as it subjects her personalty to the jurisdiction of courts of law and equity, and to their judgments and decrees, and makes them bind

the absolute estate or *corpus* of her realty, and subjects her personalty to execution, just as if she were single; thus making change in expansion, not restriction, of her liability under the law as it was aforetime. This act of 1893 does not say in words just what contracts bind her estate. Neither did chapter sixty six, as first enacted, and as it was when construed by the cases of *Patton* v. *Bank* and others cited above, fixing her capacity to charge her estate under that chapter. This act of 1893 omitted, and thus repealed, the restrictions upon her capacity to bind her estate created by the act of 1891; thus manifesting the legislature's dissatisfaction with those restrictions. And the act of 1893 continued the capacity of the wife to take and hold separate estate and her *jus disponendi* or power of disposal as fully as they existed from the first enactment of chapter sixty six, and as the power to charge her separate estate with debt is an incident or consequence of her power to hold and dispose of separate estate, it follows that she may still charge her separate estate as pointed out in the cases above cited. Nay, more, the act made her debts bind the *corpus* of her real estate, whereas only its rents and profits could be subjected before that act; and it wiped out the limitations or restrictions imposed by the act of 1891 upon her power to charge her separate estate with debt, signifying an intent to increase, rather than lessen, her power. It is the capacity to own and dispose of her property that gives birth to her ability to charge it with debt. Neither of those capacities gives her ability to contract at law, as law, without statutory mandate to do so, knows not her separate estate nor power to contract. Though her title to her estate is, under our statute, a legal estate, she did not have power to contract at law, her contracts binding her estate and being enforceable against it only in equity. *Pickens' Ex'rs* v. *Kniseley*, 36 W. Va. 794, 798 (15 S. E. Rep. 997) and cases cited; opinion in *Carey* v. *Burruss*, 20 W. Va. 576. But that furnishes no argument now against the validity and full legal operation in a court of law of her note or bond or other contract, because the act of 1893 commands a court of law to render judgment upon it binding her estate, and that necessarily clothes her

with power to contract in the eyes of a court of law by contracts that would have been enforceable against her separate estate in equity.

It is contended by counsel that this new section fifteen of its own force gives married women as full power to contract as if single. There are some views that occur to me imparting force to this theory. No other section defines or limits her power to contract. The section says she may be sued in any court in all cases as if single, and any judgment against her shall be a lien on the *corpus* of her real estate; it thus seeming that the legislature intends to make her a single woman as to liability to civil suit, and for 'the same causes as if single. Saying she may be sued in all cases as if single appears to mean that any cause of action on contract which would bind an unmarried woman will bind a married one; and, being compared as to liability to suit with the single woman, why is she not correlatively measured by the single woman also as to her capacity by contract to subject herself to that liability? But further reflection induces me to the conclusion that the mission of this section is not to enlarge the woman's ability to contract, but only the remedies upon contracts binding her estate. Before the enactment of this section, justices' courts and all courts of law were powerless to enforce her contracts against her separate estate, and even equity could not subject the *corpus* of her estate to her debts; and the design and motive of this section were to remedy these evils by giving law courts, as well as chancery, jurisdiction over her estate, and to bind the corpus of her real estate by contracts which before bound only its rents and profits; and it was not the purpose to erect a new test of the validity of her contracts by making binding contracts not before binding. See *Fitzgerald* v. *Quann*, 109 N. Y. 441 (17 N. E. Rep. 354). But it is of no practical importance to the decision of this case that section fifteen does not enlarge the married woman's capacity to contract, since it is clear that the single bill in this case is binding on Mrs. Cline's separate estate, as the statute was before the passage of section fifteen, as expounded by this Court in cases above cited, and as it still remains; and, being valid, she can be sued at law upon it.

And, in general, it is not important, as, so far as I now anticipate, there are very few contracts which need the helping hand of such a construction of section fifteen to give authority to contract, seeing that decisions years ago declare that debts for which her separate estate may be held liable are such as arise out of any transaction out of which a debt would arise if she were single, except bonds without consideration. *Camden* v. *Hiteshew*, 23 W. Va. 236. But by said section fifteen other change is made in our law. Before it, no personal judgment or decree could be rendered upon the contract of a married woman; but in this respect, by that section, change is meant unmistakably by the very letter of the section's saying she may be sued "the same in all cases as if she were a *feme sole*, and any judgment rendered against her in any such suit shall be a lien against the *corpus* of her separate estate," and execution may issue against her separate personalty as if single. "Judgment against her" is the language. My present opinion is that a personal judgment against a married woman would bind all her estate owned by her at the date of the judgment or afterwards acquired, without regard to the date of the contract; whereas, until this section, it bound only property owned by her at the date of the contract. *Pickens' Ex'rs* v. *Kniseley*, 36 W. Va. 801 (15 S. E. Rep. 997); 2 Pom Eq. Jur. § 1123; *Ankeney* v. *Hannon*, 147 U. S. 128 (13 Sup. Ct. 206); *Crockett* v. *Doriot*, 85 Va. 240 (3 S. E. Rep. 128); *Lee* v. *Cohick*, 39 Mo. App. 672; *Pike* v. *Fitzgibbon*, 17 Ch. Div. 454; Wells, Mar. Wom. § 619; *Van Metre* v. *Wolf*, 27 Iowa 346. The legislature intended to make her pay her honest debts out of any property which she now owns or may come to own. Authorities I have met with on an examination of this point indicate that personal judgments are rendered and bind after-acquired property, just like judgments against persons in general, where statutes subject married women to judgments in courts of law. *Fabrique Co.* v. *Stanage*, 50 Ohio St. 417 (34 N. E. Rep. 410); *Whittaker* v. *Kershaw*, 45 Ch. Div. 320; *Bank* v. *Garlinghouse*, 53 Barb. 619; *Insurance Co.* v. *Babcock*, 42 N. Y. 613; *Van Metre* v. *Wolf*, 27 Iowa, 341; *Smith* v. *Dunning*, 61 N. Y. 251; *Miner* v. *Pearson*, 16 Kan. 28; Kelly, Cont. Mar. Wom. 283; Wells, Mar. Wom.

§ 619. As said in the Iowa case just cited, it seems to me that there is nothing in the statute to indicate that judgments against married women are different from personal judgments against others or have less force and effect as to her property, and therefore they may be enforced against after-acquired property; and the equity principle heretofore prevailing, that the decree can go only against the property before the court, and can not be personal, has ceased with this act of 1893. As chancery has been proceeding, there could be a decree only against the married woman's separate property before the court, and no personal decree (*Howe* v. *Stortz*, 27 W. Va. 555) but, of course, this doctrine can not apply now to actions at law under section fifteen, as an action at law, unless on attachment, will not proceed against specific property, personal or real; and there can thus be only the ordinary personal judgment as if the action were against a single woman. In *Peck* v. *Marling's Adm'r*, 22 W. Va. 708, as section thirteen, chapter sixty six, Code, allowed a married woman living separate from her husband to carry on business, her power to contract was thence implied, and she was subjected by mere implication to common-law action on such contract, whether she had separate estate or not when she made the contract. Of course, a judgment on the contract of such a woman would be personal, and, I take it, would bind after-acquired estate. Though I have indicated an opinion as to the effect of a judgment upon after-acquired property, it is by no means necessary to decide it, since we are dealing only with the question of whether the plea of coverture in this case answers or bars the action, not with the question of what property would be bound by judgment therein.

It is said in brief of counsel that the Circuit Court was of opinion that the language found in the statute that a married woman holds her separate estate free of her husband's control, and it is in no way liable for his debts, exonerates it from his debt, though she bind herself as surety for it, and that she can not go his security, as there is no consideration beneficial to her or her estate. I need only say, as to this, that our statute has from the first declared that a wife may

hold certain estate to her sole use, free from her husband's control and debts; but that language was only used to remove the common-law rule by which the husband, by marital right, acquired ownership of all her personalty, and the use and rents and profits of her realty during coverture, and was not used to say that she could not, by her own act, subject it to her husband's debt. The statute read in the same way in years gone by, when this Court held in *Radford* v. *Carwile*, 13 W. Va. 572, and *Dages* v. *Lee*, 20 W. Va. 584, and other cases, that a married woman, as surety for her husband or any one else could bind her separate estate by a writing, without any consideration moving to her or her estate, the benefit to the principal being sufficient. Should we sustain the theory mentioned, we would overrule numerous cases. But it is relied upon in the plea that the debt for which the single bill was given was an antecedent debt, due from the husband for money lent; not a new consideration. The answer to this is that the instrument extended the time one day for payment. It is well settled that though, to bind a surety, there must be some consideration, yet forbearance, postponement of payment is sufficient consideration. 1 Brandt, Sur. § 16; 3 Am. Eng. Enc. Law, 836; Metc. Cont. 199; 1 Whart. Cont. § 532; Bish. Cont. § 1266. It is true, indulgence of one day is short, but even that is in many cases salvation to the business character and success of a business man. If a pressing creditor agrees to forbear suit for even a day, it may enable the debtor to dispose of property, or get the help of a friend, or in some way save himself from ruin. And though the consideration be small, or even nominal, if it be appreciably valuable, it will be sufficient, and the court will not enter into the work of nicely weighing how small or valuable it may in fact have been. Parties have weighed these things themselves. *Lawrence* v. *McCalmont*, 2 How. 426, 452; *Davis* v. *Wells*, 104 U. S. 159; Brandt, Sur. § 13; 3 Am. & Eng. Enc. Law, 431.

This single bill gave indulgence for a fixed time, and thus tied the hands of the creditors from suit until its expiration, as even a mere promissory note, given for a pre-existing one, will. *Bank* v. *Good*, 21 W. Va. 455, point 3; *Hopkins* v. *Det-*

*wiler*, 25 W. Va. 734. But, as it is not a parol contract, but a specialty, it ended and merged the prior debt, so that suit could never be brought on that prior debt, but only on the single bill. Per Roane J., in *M'Guire* v. *Gadsby*, 3 Call, 237; 5 Rob. Prac. p. 808, Chapter 76; *McNaughten* v. *Partridge*, 38 Am. Dec. 731; *Van Vliet* v. *Jones*, 43 Am. .Dec 633; *Ladd* v. *Wiggin*, 60 Am. Dec. 551; *McDonald* v. *Ingraham*, 64 Am. Dec. 166; *Baker* v. *Baker*, 75 Am. Dec. 243.

It is contended by counsel that, as the single bill in this case recites that its promise is "for value received," that is *prima facie* evidence of valuable consideration, and repels the allegation of want of consideration in the plea. So the words are *prima facie* evidence of valuable consideration. Per Lee, J., in *Averett* v. *Booker*, 15 Gratt. 164; Daniel, Neg. Inst. § 161. But the trouble in front of that argument is that the plea is taken for true for want of replication, and, though the single bill would be evidence on that point, if there were issue on it, it is not under these circumstances. So it is argued that the seal imports consideration, and is evidence to deny the plea. So it would be, were there a replication.

It is argued by counsel that section fifteen enables a married woman to contract as a single woman and therefore that exception from her capacity to contract, stated in point 1 of *Hughes* v. *Hamilton*, 19 W. Va. 366, that her bond being void at law, she can show want of consideration, would cease, and she would come under the rule that a sealed instrument imports consideration, and its want can not be shown at law. 5 Rob. Prac. 606, 608; *Taylor* v. *King*, 6 Munf. 357; *Wyche* v. *Macklin*, 2 Rand. (Va.) 426; *Harris* v. *Harris*, 23 Gratt. 737; Metc. Cont. 3. Illegality of consideration in a sealed document may be shown at law, but not want of consideration, or failure of consideration, according to common-law principles. The statute (section five, chapter one hundred and twenty six, Code) changes the rule by allowing failure of consideration to be pleaded at law, but, not mentioning want of consideration, leaves that as at common law; so that neither at common law nor under section five, chapter one hundred and twenty six, Code, can want of con-

sideration be pleaded or shown at law.   *Harris* v. *Harris*, 23 Gratt. 737.   As just stated, failure of consideration may be shown under that statute as defense to a sealed instrument. *Fisher* v. *Burdett*, 21 W. Va. 626.   We must, under that section, five, draw the line of distinction between want of consideration and failure of consideration, as they are different. The words "failure in the consideration," used in that section, refer to contracts where originally there was consideration subsequently failing, not to contracts wholly wanting consideration at their execution.   *Crouch* v. *Davis*, 23 Gratt. 75; *Cunningham* v. *Smith*, 10 Gratt. 255; *Watkins* v. *Hopkins*, 13 Gratt. 743.   But, as we hold that said section fifteen of chapter sixty six, found in chapter three, Acts 1893, does not enable a married woman to make a contract to bind her separate estate which she could not have made before it, and as our decisions stated above hold that a bond without consideration does not bind a married woman's estate, and she could show that want in a chancery suit to enforce it against her estate, and as we do not think that by giving action at law on such bond the legislature could have meant to deprive her of that defense, we conclude she may make defense of want of consideration at law, unlike other persons.   But as above stated, there is valid consideration for this bond. So the plea presented no defense, and it was error to receive it, and render judgment in favor of the party filing it.

We therefore reverse the finding and judgment, and, rendering such judgment as the Circuit Court ought to have rendered, we disregard the plea as immaterial, and render judgment for plaintiff against both defendants.   *Mason* v. *Bridge Co.*, 28 W. Va. 639.