H. L. MARTIN, *By etc. v.* OSCAR V. EWING *et al.*

(No. 7122)

Submitted May 3, 1932.  Decided May 17, 1932.

(Rehearing denied July 20, 1932)

*E. M. Surber* and *Henry S. Cato,* for appellants.
*M. M. Robertson* and *L. E. Given,* for appellee.

MAXWELL, JUDGE:

From a decree of the circuit court of Kanawha County cancelling a deed and a bill of sale the defendants appeal.

The plaintiff, H. L. Martin, who sues by A. E. Price, his next friend, to cancel said instruments on the ground of the grantor's mental incompetency to execute them, was about 61 years of age at the time of their execution. His wife had died eighteen days previously. There were no children. The defendants, Oscar B. Ewing and Icie L. Ewing, husband and wife, were neighbors of the plaintiff, whose wife was a half-aunt of Mrs. Ewing.

The plaintiff owned and lived on a tract of 15 acres of land on the west side of Elk River some 14 or 15 miles north of the city of Charleston. On the 27th of May, 1929, he conveyed 13½ acres of said tract to the defendants, and executed to them a bill of sale for personal property listed as of $245.00 value. The land conveyed to the defendants was supposed to be worth about $20,000 at the time of the conveyance.

It is a *concessum* that at the time of the execution of the conveyance and bill of sale it was in the contemplation of the parties that maintenance should be furnished the grantor by the grantees, though no mention of that fact is made in either the deed or the bill of sale. The latter instrument carries the recital that it was in consideration of cash in hand paid. The deed recites that it was ''in consideration of the sum of ten dollars cash and other good and valuable considerations in hand paid the receipt of which is hereby acknowledged.'' Neither instrument contains any lien or reservation. Both are absolute and unqualified.

There is a clash of testimony as to the plaintiff's mental capacity at the time of the transactions under consideration. For the plaintiff, there is medical testimony that he is a moron —mental development about that of a child of twelve years; that he was not competent to transact business. A number of lay witnesses sustain the proposition that the plaintiff was below normal mentality, and particularly that because of stress and worry consequent upon the death of his wife he seemed to act in an unnatural manner. On the other side there is the testimony of numerous acquaintances, some of whom have known the plaintiff many years. They say they never saw anything to indicate that the plaintiff was not of normal mentality and competent to transact the ordinary business affairs of life, and never heard any intimation to the contrary until about the time this suit was brought.

At the time of the execution and delivery of the deed and bill of sale at plaintiff's home, it appears that there was some discussion between plaintiff and defendants concerning the subsequent preparation of a contract for the support and maintenance of the former by the latter. A. E. Price who wrote both instruments testified that after he prepared the deed he asked Martin if he wanted a contract written then, and Martin replied that it wasn't necessary to "make it at that time." Price stated further that Ewing said he "would rather they had one, and they would know then what they were to do"; and that as they were crossing the river returning to defendants' home from the home of plaintiff, Ewing said "make the contract as strong as you want to, it makes no difference how hard you make it, I will do more than I have to." It does not appear that there were any negotiations between plaintiff and defendants regarding the contract prior to the execution and delivery of the deed.

After spending about three months at defendants' home, plaintiff had a contract prepared and presented to defendants for their signatures. They refused to sign and thereafter submitted one to plaintiff for his signature, which he declined to sign. The drafts of contract differed as to the place where plaintiff was to be supported and cared for by defendants. By the one prepared for plaintiff, he was to be supported

at his home upon the land conveyed, with a stipulation that, should the defendants fail to comply with the provisions of the contract, the deed should be void and the property should revert to the plaintiff; by the one prepared at the instance of the defendants they were to support the plaintiff in their own home. The former draft would have made the care and maintenance of plaintiff a charge upon the land; the latter would not.

The trial court found that although the plaintiff was considerably below the average man in intelligence, nevertheless, at the time of the execution and delivery of the deed he had sufficient mental capacity to make a deed; that the consideration or inducement for the conveyance of the real estate and the transfer of the personal property by the plaintiff to the defendants was an understanding between them that the grantees would enter into such written agreement to support and maintain him as should be prepared by A. E. Price acting on behalf of plaintiff; that defendants having declined to execute the agreement so prepared and tendered, there has been a failure of consideration; and therefore that the plaintiff is entitled to a rescission of the deed and bill of sale and a reconveyance to him of the real estate and a retransfer of the personal property. We approve the chancellor's conclusion though we find it necessary to follow a somewhat different line of reasoning.

It is the rule that where the consideration for a conveyance is support and maintenance to be furnished the grantor by the grantee, no particular place being specified, such maintenance shall be provided where the grantor shall reasonably elect to receive the same without causing unnecessary expense to the grantee. *Flinn* v. *Boso,* 79 W. Va. 493, 92 S. E. 130.

In any contract for support and maintenance the place at which the same is to be furnished is of first importance, though, as just noted, the fixing of the place by the contract is not ordinarily indispensable. In this case, however, the place is of basic importance—the very essence—because of the physical facts. The land involved is separated from the defendants' home by Elk River. There is no bridge in the vicinity. The parties use a small rowboat for crossing.

Was the plaintiff to be maintained in the home of the defendants as contemplated by the proposed written contract tendered by them to him for execution? Was he to be maintained in his old home as Price testified was his understanding and as provided in the draft of contract prepared for plaintiff? Or, as testified by Mrs. Ewing, was it in contemplation that the defendants should build a cottage for their own residence on the thirteen and a half acre tract close to the plaintiff's home? Or, were the parties to continue in their respective homes on opposite sides of the river regardless of the number of daily crossings and re-crossings that might be involved? Another matter was equally indefinite: Was the defendants' obligation of support and maintenance to be a charge upon the land? The drafts of contract tendered by the parties respectively were at variance on this point.

As evidenced by the proposed written contract prepared in behalf of plaintiff and submitted to the defendants for signature, he elected to be maintained in his old home. This, the defendants refused, though they say they are willing to care for him in their own home, and such refusal constituted a failure of consideration if, in fact, there was ever an agreement between the parties for support, the place not fixed. But was there an agreement?

A *sine qua non* of all contracts is that there must be mutuality—a meeting of the minds of the parties. *Va. Coal Co.* v. *Land Co.,* 100 W. Va. 559, 131 S. E. 253; 6 Ruling Case Law, p. 599; 13 Corpus Juris, p. 264; Pollock, Principles of Contract (8th Ed.), p. 3. From the recital of the facts in the case at bar it clearly appears that there was no agreement between the parties as to vital elements of a contract for support and maintenance. The deed and bill of sale were executed and delivered in the total absence of understanding as to what was to be done thereafter. Those instruments constituted only a part of contemplated arrangement which entirely failed because of lack of mutual assent. The minds of the parties did not meet. There was no contract.

By reason of the rule which precludes parties to sealed instruments from asserting want of consideration (such in-

struments import consideration), *Taylor* v. *King*, 6 Munf. (Va.) 358, *Williamson* v. *Kline*, 40 W. Va. 194, 20 S. E. 917, we probably should not say there was want of consideration in this transaction, but at the very least there was a total failure of consideration upon the elimination from the equation of support and maintenance because of the parties' not reaching an agreement with respect thereto. "Equity has jurisdiction to cancel conveyances the consideration for which has failed." *Echard* v. *Waggoner,* (Va.) 101 S. E. 245.

In the light of all the foregoing we are of opinion that the chancellor was plainly right in holding that the plaintiff's property should be restored to him.

We affirm the decree.

*Affirmed.*

Upon petition for rehearing :

It is urged that the allegations of the bill are not broad enough to warrant cancellation of the deed and bill of sale on the ground that there was no meeting of the minds of the parties as to the place where maintenance was to be furnished by the defendants to the plaintiff.

True, it is not specifically alleged in the bill that there was no meeting of the minds on this point. But there is an allegation that the defendants agreed with the plaintiff to support him at his old home. The defendants deny this in their answer and say that such support was to be furnished at their home. Thus, there is clearly presented by the pleadings an issue as to whether the parties agreed as to the place where maintenance was to be furnished. We think the evidence demonstrates that this was not agreed. We have considered this as the decisive point.